Di Paolo et ux. *v.* Phila. R. T. Co., Appellant.

Argued October 22, 1930.

Before TREXLER,
P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM and
BALDRIGE, JJ.

*Samuel H. Coplin,* for appellant.

*Graham, Garaguso & Foley,* for appellees.

OPINION BY TREXLER, P. J., February 27, 1931:

Mrs. Mildred DiPaolo boarded a trolley car of the defendant company at 15th Street and Girard Avenue in the city of Philadelphia. She got on in the front of the car which was crowded and went past the conductor in the center of the car, paying her fare. She then took her position in the enclosure just opposite the conductor.

The car proceeded south on Fifteenth Street and when a block or two south of Girard Avenue, at a point which was not a regular stop, but was in the middle of the block, came to a sudden, violent and unusual stop. The force was so great as to throw the plaintiff against the iron rail which was on the right hand side and she stated, "three or four others fell on top of me and not only that, three or four persons in the car fell on the floor and fell on top of

each other." She was holding on to a strap and the force pulled her hand off the strap. As a result the plaintiff was injured. The jury returned a verdict in favor of Mrs. DiPaolo and her husband.

The question is, was there sufficient evidence to take the case to the jury, or should a nonsuit have been entered? A motion for judgment n. o. v. was refused.

There seems to be no doubt that this was an unusual motion of the car. The effect upon the plaintiff and upon some of the other passengers was such as would not result from the ordinary and proper operation of the car. It would, therefore, seem that it would be in order for those who were running the car to show what the cause of the sudden stop was. The unusual manner of stopping calls for an explanation by the defendant. In Tilton v. Philadelphia Rapid Transit Co., 231 Pa. 63, we find: "If sudden and violent stop was made necessary by something which occurred outside of the car, and which was beyond the control of the motorman, and in his judgment made it needful to stop abruptly, rather than incur the risk of otherwise causing more serious injury, that fact should have been made to appear."

The question therefore is whether the explanation offered by the defendant presented such a clear situation as to take the matter from the jury and compel the court to decide that there was no negligence. The motorman and the conductor of the car in question were called. They furnished no testimony as to the speed of the trolley car nor of the truck. They did not tell the distance the trolley car was away from the truck at the time the truck entered the track. The motorman said that "my distance to stop was too short." The only other witness produced by the defendant testified that in response to the question, "Do you know how far away the trolley car was when the truck entered the tracks?" A. "I guess a few

steps when the truck entered the tracks." When he was asked, "Approximately how many feet was it?" he answered, "Well, about six feet." He was asked again by the attorney for the defendant: "About how far away was the truck from the trolley car when the truck was at the west curb line?" "A. About six feet, I will say." Again, "How far away was the trolley car from the truck when the truck was at the curb?" and after some parley, the witness said, "About ten feet." The lower court we think properly commented on this testimony as follows: "The attorney for the defendant stated: 'I feel the witness is a little bit confused.' Certainly, in view of this statement by the defendant's own counsel, in view of the witness' hesitations and his frequent use of the word 'guess,' his credibility as to the happening of this collision is also for the jury."

The truck came out of a narrow street, but necessarily had to traverse the sidewalk and some portion of the street before it got to the track upon which the car was passing. The motorman tried to stop and applied his emergency brake, but he gave no evidence as to when he saw the truck coming from behind whatever obstruction there might be before it arrived at the houseline. We have no information as to the speed of the truck, and as stated before, as to the speed of the trolley. There was some testimony favorable to the defendant to the fact that the trolley car stopped shortly after the collision, but we feel that the explanation given by the company was not so full as to exclude the question of negligence. Certainly the motorman of the car could have entered into greater detail as to the occurrence and it may be presumed that whatever circumstance favorable to the defendant surrounded the accident, would be disclosed. We think it clearly appears that the shock was violent and

unusual and as stated before required an explanation from the company and that the explanation proffered by the company was not so full as to take the matter from the jury and require the court to rule that the plaintiff had no cause of action.

The judgment is affirmed.