Jenkins et ux. *v.* Beyer (et al., Appellant).

528

Argued May 6, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*A. W. Henderson,* with him *J. R. McNary,* for appellant.

*A. M. Oliver,* with him *Walter L. Dipple,* of *Dipple and Oliver,* for appellee

OPINION BY BALDRIGE, J., July 18, 1935:

This appeal is from a judgment obtained by the plaintiffs against the defendants in the sum of $1,500 for the death of a minor son, between seventeen and eighteen years of age. The only appeal taken was by the Pittsburgh Railways Company.

The decedent, on the night of August 27, 1931, was a passenger on a southbound, one-man street car. As the car approached the stop at Brownsville Road and Cedricton Street, he moved to the front beside the operator and deposited his fare in the box. It is alleged that the operator opened one of the doors while the car was still in motion and then applied the brakes in such a sudden and violent manner that the deceased was thrown off the car against a passing automobile, suffering injuries from which he died a few days later.

The appellant contends that there was not sufficient evidence of negligence on the part of the operator. Proof that a street car "stopped with a jerk," "came to a hard stop" or "stopped all of a sudden" is not of itself sufficient to show negligent operation. "They must be accompanied by evidence inherently establishing that the occurrence was of an unusual and extraordinary character, or by evidence of its effect on other passengers sufficient to show this": Smith et ux. v. Pgh. Rys. Co., 314 Pa. 541, 543, 171 A. 879; Endicott v. Phila. Rapid T. Co., 318 Pa. 12, 177 A. 17. Paul Labalzo, a passenger on the car, testified that about the time deceased went forward in the car and placed his check in the box, "the motorman opened the door and jammed the brake and just like threw him off." This witness

was hanging on one of the straps and the car jerked so that it turned him around and slightly injured his wrist. Aloysius Spinnenweber, another passenger, when asked what had happened, answered: "Before the car came to a stop, the doors were thrown open, the first doors were thrown open, this way, of the car, and Jenkins stepped out of the car just like that (indicating). His back was facing the machine that came along, and as he stepped out, the car jerked and jerked so violently that it threw him completely off the car." On cross-examination, when asked to explain the kind of a jerk, the street car gave, he replied: "It seems as though the whole car vibrated and as it vibrated he was thrown from the car."

In Smith v. Pgh. Rys. Co., supra, the lower court was reversed in submitting the question of defendant's negligence to the jury under the plaintiff's testimony that as the car approached her stop, going down grade, she went to the front of the car, took hold of a strap, and it suddenly "started to shoot forward faster" and then stopped, throwing her backwards to the floor. The court held that this testimony did not sufficiently show the negligent operation of the car.

In Endicott v. Phila. Rapid T. Co., supra, plaintiff was sitting at the extreme end of the long seat. She stated that the car made a "terrible, terrific jolt" and that other passengers were "jostled up against each other." She was thrown to the floor and injured, and obtained a judgment. The Supreme Court reversed, and entered judgment for the defendant, holding that in the plaintiff's position the ordinary jolt or jerk such as is incident to the usual operation of a street car would be sufficient to topple her out of her seat.

In Sanson v. Phila. Rapid T. Co., 239 Pa. 505, 86 A. 1069, the plaintiff was seated in the right rear corner of the car. As it approached his destination, he gave a signal to stop, the car began to slow down, he then took

hold of the rear door handle, and rose from his seat. As he was standing in the open doorway, waiting for the car to stop so he could alight safely, "the speed of the car was suddenly increased with an unusual jump or jerk," which caused him to be thrown through the open doorway to the rear platform, from whence he fell to the street. The court sustained a recovery. See, also, Kleine v. Pgh. Rys. Co., 252 Pa. 214, 97 A. 395; Bliss v. Phila. Rapid T. Co., 73 Pa. Superior Ct. 173. In the case before us, there was testimony that the distance between the near rail and the curb was 12 feet, 10 inches, and that the automobile, when passing the car, was 2 feet from the curb. The jury, therefore, could have concluded that the deceased, when on the platform of the car, was thrown, as the result of a jolt, several feet against the automobile. In that event, the effect of the application of the brakes speaks convincingly that force of an unusual character was used, and brings this case within the ruling in Sanson v. Phila. Rapid T. Co., supra. In our opinion, the jury was justified in finding that the defendant, a common carrier for hire, owing to its passengers the highest degree of care and diligence in enabling them to alight safely, was guilty of negligence: Hughes et ux. v. Pgh. T. Co. et al., 300 Pa. 55, 150 A. 153.

The appellant further maintains that the plaintiffs' son, in attempting to alight from a moving car, was guilty of contributory negligence. A portion of Spinnenweber's cross-examination is as follows: "Q. It (the accident) was caused by putting on the brakes. Is that your idea? A. Yes, sir ...... Q. He had one foot on the car and the other one reaching for the ground when this jerk came? A. Yes, sir. Q. He attempted then to step off the car while it was still moving? A. Yes, sir." Re-direct: "Q. Was he on the car when the car jerked? A. He was just alighting from the car when the car jerked. Q. Was he still on the street car or not? A. Yes.

His left hand and his left foot were still on the car when the car jerked, and that is what throwed him off." True, the evidence is somewhat contradictory, but where, under one part of the testimony, a plaintiff is entitled to go to the jury and under another part he is not, it is for the jury to consider the conflicting statements and determine which shall prevail: Cuteri v. West Penn Rys. Co., 305 Pa. 347, 157 A. 686. The jury was instructed that if the deceased stepped from the car while in motion, there could be no recovery, as such action would make him guilty of contributory negligence. We find no error in submitting this disputed question of fact to the jury: White et ux. v. Phila. Rapid T. Co., 231 Pa. 93, 79 A. 982.

The appellant's final contention is that the verdict was excessive. There was evidence that the deceased's income amounted to $962 a year and that his total expenses for maintenance amounted to $1,251. Bills for nursing, hospitalization, interment, etc., came to a total of $629. The court instructed the jury that when it came to the question of damages it could assess the net value of the deceased's services to his parents until he reached the age of twenty-one years, and correct directions were given respecting this item in the plaintiff's claim. The value of lost services is always problematical, and a certain amount of discretion must be given to a jury, as it is for them, in the exercise of sound judgment, to determine the fair value of this element of damages in negligent cases. While the amount allowed for services may appear somewhat liberal, it is only in clear cases that this court will correct a verdict on the ground of excessiveness: Parkin v. Phila. Rapid T. Co., 300 Pa. 569, 151 A. 362; Wanamaker v. Ellis, 306 Pa. 222, 159 A. 1. In our judgment, the amount of the verdict is not so large as to justify our interference with it.

Judgment affirmed.