## Cook v. Philadelphia Rapid Transit Company, Appellant, et al.

Argued October 18, 1935.

566

 Before KELLER, P. J., BALD-
RIGE, STADTFELD, JAMES and RHODES, JJ. 

*Jay B. Leopold,* with him *Bernard J. O'Connell,* for appellant.

*Peter P. Zion,* with him *Jacob Boonin,* for appellee.

OPINION BY BALDRIGE, J., January 31, 1936:

The plaintiff recovered judgment for damages for personal injuries sustained by her while a passenger in one of defendant's street cars. Defendant appealed, assigning, as error, refusal of its motion for judgment n. o. v.

On January 23, 1932, at about 5 o'clock in the afternoon, the plaintiff and her daughter boarded one of defendant's trolley cars, northbound on Fifth Street, Philadelphia. After the trolley had passed Tabor Road and was approaching Olney Avenue, where they intended to alight, they arose from their seat located behind the conductor's booth in the center of the car and started to walk to the center exit. About that time the front of the car was opposite a parked Hudson automobile headed north along the east curb of Fifth street. The motorman saw Harry Burdick, the additional defendant, and the owner and operator of the car, starting to move it. The trolley continued but a very short dis-

tance when the motorman heard a "slight scraping"—
"a crash" against the right side, about the center, of
the trolley. He thereupon promptly applied his brakes
and brought his car, which had been running at a rate
of 15 to 18 miles an hour, to a standstill within a dis-
tance of 4 to 8 feet. The abrupt stopping caused the
plaintiff, who at that moment was in the aisle about the
middle of the car, to be thrown or propelled forward
approximately 20 feet to the front of the car behind the
motorman, where she fell on her knees.

The plaintiff testified that after she had risen and
walked 4 or 5 feet, she did not "know what happened,
but the floor just seemed to raise up." The daughter
said that the car gave a "sudden jolt," and threw her
"around the bar" in front of the conductor, to which
she held. She testified also that she saw but one other
passenger, although the conductor stated that the car
contained 12 or 15 passengers. However that may be,
there was no testimony that the sudden stopping or
jerking of the car affected others who may have been
in the car.

The facts, subsequently appearing, clearly disclose
the cause of the scraping. The Hudson car pulled
away from the curb into the path of a Chevrolet car
which was proceeding in the same direction, with which
it collided. As a result of the impact, the Chevrolet
was thrown against the trolley car, back of the center
doors, and when the trolley stopped, its rear end was
wedged under the body of the trolley.

Accepting the plaintiff's evidence as true, was it suffi-
cient to establish the defendant's negligence?

The mere happening of this injury to the plaintiff did
not raise a presumption, or even an inference, of negli-
gence upon the part of the carrier, as the accident was
not caused by something connected with the means or
appliances of transportation: Zaltouski et ux. v. Scran-
ton Ry. Co., 310 Pa. 531, 534, 165 A. 847. The appel-

late courts have recently had occasion to state in a number of cases that when passengers are injured by being thrown down in trolley cars, due to their sudden starting or stopping, the facts must show clearly a negligent operation before recovery can be had.

In Smith et ux. v. Pittsburgh Rwys. Co., 314 Pa. 541, 543, 171 A. 879, it was held that where a passenger is injured while standing or walking in a trolley car, statements that the car "started violently," "started with a sudden, unusual, extraordinary jerk," "came to a hard stop," etc., are not of themselves sufficient to show negligent operation. There must be strong, intrinsic evidence of an unusual character of the jolt or jerk, or evidence of its effect on other passengers, as in Tilton v. Phila. Rapid Trans. Co., 231 Pa. 63, 79 A. 877; Sanson v. Phila. Rapid Trans. Co., 239 Pa. 505, 86 A. 1069; Jenkins et ux. v. Beyer et al., 118 Pa. Superior Ct. 527, 180 A. 135.

In Endicott v. Phila. Rapid Trans. Co., 318 Pa. 12, 177 A. 17, the plaintiff was carrying an umbrella and a bag of groceries. As she took hold of an iron bar in front of a seat and sat down, the car gave "a terrible, terrific jolt and stopped very suddenly," causing her to fall to the platform and injuring her. Other persons were twirled around and jostled up against each other. The court held that trolley cars often stop with a jerk under ordinary circumstances, which cause passengers to be jolted, but such evidence is insufficient to establish negligence.

In Cutler v. Phila. Rapid Trans. Co., 319 Pa. 351, 179 A. 434, the plaintiff rose to leave the car and there were two violent jerks in succession, which threw her first forward and then backward against the seat and resulted in injuries. The court there said (p. 352) : "The rule is now settled that testimony indicating that a moving trolley car jerked suddenly or violently is not of itself sufficient to establish negligence unless from

other facts and circumstances it clearly appears that the movement of the car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation." See, also, Waldov et al. v. Phila. Rapid Trans. Co., 120 Pa. Superior Ct. 304, 182 A. 129.

We do not see that there was a want of care in the motorman's suddenly stopping the trolley when he was aware that something had collided with it. It would seem that that was just what an alert motorman should have done. Prompt action was required of him in the performance of his duty. Passengers, standing or walking in moving cars, should protect themselves from a sudden jolt or fall by firmly holding to handles, straps, etc., provided for that purpose. In the busy streets of a city, where there are numerous automobiles, as was shown here, passengers on trolley cars must realize that contingencies may arise requiring a motorman to apply the brakes quickly to stop his car, to avert possible injury to the passengers or those using the highways. The consequence of failure to stop in the case at bar might have been as grave as if the automobile had been driven suddenly into the immediate path of the trolley. Certainly, in such event, the motorman could not be convicted of negligence if it was necessary to avoid a collision.

In Zaltouski v. Scranton Ry. Co., supra (310 Pa. 531), a truck skidded into the side of the trolley in which plaintiff was a passenger. The car stopped within a few feet after the collision, throwing her to the floor. The court held there could be no recovery.

In Tilton v. Phila. Rapid Trans. Co., supra (231 Pa. 63), and DiPaolo et ux. v. Phila. Rapid Trans. Co., 101 Pa. Superior Ct. 254, recoveries were had, as no sufficient explanation or reason was given for the violent stopping of the car. In the former case, the court said (p. 65): "If the sudden and violent stop was made necessary by something which occurred outside the car,

and which was beyond the control of the motorman, and in his judgment made it needful to stop abruptly, rather than incur the risk of otherwise causing more serious injury, that fact should have been made to appear." The facts missing in those cases were supplied in the case at bar.

A careful consideration of this record leads us to the conclusion that the court erred in refusing the request for binding instructions or in not entering judgment for original defendant n. o. v.

Judgment against the Philadelphia Rapid Transit Company, the original defendant, is reversed.