## Staller, Appellant, et al., *v.* Philadelphia Rapid Transit Company.

Argued May 8, 1940. Before DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*J. Webster Jones,* for appellant.

*Harold Scott Baile,* with him *Bernard J. O'Connell,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, June 24, 1940:

This appeal is from the action of the court below in entering judgment upon the whole record for appellee, Philadelphia Rapid Transit Company, under the provisions of the Act of April 20, 1911, P. L. 70, after the jury disagreed, in a trespass action brought against it by appellant, Morris Staller, to recover damages alleged to have been sustained by him while a passenger on one of appellee's street railway cars.

Reviewing the record in the light most favorable to appellant and giving him the benefit of every reasonable inference, as we are required to do in appeals of this character *(O'Malley v. Laurel Line Bus Co.,* 311 Pa. 251, 255; *Norris v. Philadelphia Electric Co.,* 334 Pa. 161, 162), appellant's testimony in his own behalf establishes the following facts: On August 18, 1937, appellant was a passenger in an uncrowded street car being operated by the appellee company in a northwestwardly direction on Germantown Avenue, in the city of Philadelphia, over a route with which appellant was thoroughly familiar. As the car started across the triangular intersection of Germantown Avenue with Broad Street and Erie Avenue, one of the city's busiest and most complicated, after having been delayed by a traffic signal, appellant, although yet several city blocks from his destination, stood up, unsupported, in front of his seat on the first cross seat on the left side of the car, next to a window which was open above a fifteen inch protective grating, because

he "was tired and wanted to stretch" or to "get some air." As the car negotiated the crossing appellant's arm was projected out of the window next to which he was thus standing, through the opening above the upper edge of the protective grating, as the result of a series of three successive and allegedly violent jolts or jerks of the trolley which threw appellant first forward and then backwards and sideways. The arm was immediately caught by a trolley car passing in the opposite direction resulting in a compound fracture and other injuries.

The only other witness on appellant's side of the case as to how the accident happened testified that there was nothing unusual or violent about the operation of the car, as did also five disinterested passengers called by appellee and the conductor and motorman constituting the crew of the car in which appellant was riding at the time of the accident.

The court below took the view that appellant's own evidence convicted him of contributory negligence as a matter of law and rested its decision on that ground. The court said: "There is no hard and fast rule that requires a passenger in a moving trolley car who arises from his seat to observe special precautions to maintain his balance during exceptional and unusual motions of the car. Ordinary prudence, however, dictates the exercise of greater care in this regard when the car is in motion than when it is standing, and perhaps still greater care when the car is moving over tracks known to be of such a character, due to crossings, curves and the like, that the irregularities in the movement of the car are likely to be more forceful than at other times. . . . Whether the plaintiff's election to stand in the moving car rather than to remain seated in safety until his destination was reached was contributory negligence per se we need not determine, for a passenger who chooses to stand in a moving trolley car must at least exercise care sufficient to enable him to retain his balance dur-

ing usual and expected irregularities in the movement of the car, and the plaintiff's own evidence shows that he made no effort whatever in this regard until he had lost his balance, and then it was too late. . . . The plaintiff, according to his own testimony, knowingly placed himself in such a position that a sudden jerk of the car might be expected to disturb his equilibrium. It was his duty to observe precautions against such a result which would be taken by a reasonably prudent man. There were hand straps available that he did not use. The backs of seats and the hand rails ordinarily found in street cars were [as a photograph introduced into evidence by appellant shows] at hand. . . . Plaintiff's failure to exercise ordinary care for his own protection . . . contributed to the accident to such an extent that the jury, under the instructions of the court, should have rendered a verdict for the defendant."

This excerpt from the opinion of the court below correctly states the relevant principles of law as applicable to the facts of the present case, in accordance with the decisions in *Jennings v. Union Traction Co.*, 206 Pa. 31, and *Bendon v. Union Traction Co.*, 26 Pa. Superior Ct. 539. See also *Jackson v. Traction Co.*, 182 Pa. 104; *Stevenson v. Pittsburgh, C., C. & St. L. R. Co.*, 219 Pa. 626; *Miller v. Philadelphia Rapid Transit Co.*, 231 Pa. 627, 630; *Hildebrand v. Penna. R. R. Co.*, 326 Pa. 161; *Cook v. Philadelphia Rapid Transit Co.*, 120 Pa. Superior Ct. 565, 569; *Acton v. Penna.-Reading Seashore Lines*, 138 Pa. Superior Ct. 605.

Moreover, accepting all of appellant's evidence as true, nevertheless it is clearly not legally sufficient, under our cases, to permit a jury to charge the appellee company with negligence. It is well established by a long line of decisions that testimony indicating that a moving trolley car jerked suddenly or violently is not sufficient, of itself, to establish negligence in its operation. There must be a showing of additional facts and circumstances from which it clearly appears that the movement of the

car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation, and nothing short of evidence that the allegedly unusual movement had an extraordinarily disturbing effect upon other passengers, or evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the unusual character of the jolt or jerk, will suffice. See *Smith et ux. v. Pittsburgh Rys. Co.*, 314 Pa. 541, and cases there collected and reviewed; *Endicott v. Philadelphia Rapid Transit Co.*, 318 Pa. 12; *Cutler v. Philadelphia Rapid Transit Co.*, 319 Pa. 351; *Zeiger v. Philadelphia Rapid Transit Co.*, 84 Pa. Superior Ct. 541; *McClusky v. Shenango Val. Traction Co.*, 105 Pa. Superior Ct. 275. The record before us is utterly devoid of any such additional evidence.

As has already been pointed out there is no testimony whatever that the operation of the car had any disturbing effect upon appellant's fellow passengers; on the contrary all the testimony, other than that of appellant himself, including that of appellant's own witness, was to the effect that there was nothing unusual or out of the ordinary about the operation of the car. Viewing appellant's evidence as to how the accident happened in its most favorable light, it indicates nothing more than a mere loss of balance by a standing passenger in his attempt to regain which he suffered the injuries complained of. And, as was said in *Smith et ux. v. Pittsburgh Rys. Co.*, supra, "it is not unusual for persons to lose their balance while standing or walking in a car if an ordinary or moderate jerk occurs." *Brown v. Chester Traction Co.*, 230 Pa. 498, as also *Sanson v. Philadelphia Rapid Transit Co.*, 239 Pa. 505, and *Kleine v. Pittsburgh Rys. Co.*, 252 Pa. 214, cited by appellant, involved accidents, the facts and circumstances of the occurrence of which presented strong intrinsic evidence of the unusual character of the movements of the car, and they are therefore inapposite here.

Disinterested testimony on appellee's side of the case presented an entirely different version of the accident from that of appellant. A woman passenger who was sitting about two feet away from appellant and facing him at the time of the accident testified that he was riding with his arm resting on the top of the window screen with a piece of paper in his hand and that his arm was caught by the passing trolley car as he reached out to throw the paper away. The doctor who treated appellant's injuries testified that appellant told him, on the day following the accident, that "the accident was caused because his elbow was protruding over the window screen." We have considered none of this evidence, or other evidence to like effect adduced by appellee, in reaching our conclusion that the action of the court below in entering judgment on the whole record for it was proper.

Judgment affirmed.