## Phillips et ux. v. Philadelphia Rapid Transit Co.

*Thomas Z. Minehart,* for plaintiffs.

*Philip Price,* for defendant.

MACNEILLE, P. J., March 24, 1942.—The trial of this case resulted in a verdict for the plaintiff husband, Paul, of $250 and for the injured plaintiff, Gertrude, of $250. The attorney for the defense has moved for judgment n.o.v. and for new trial.

The motion for new trial is based on three reasons: (1) The verdict was against law; (2) the verdict was

against evidence; and (3) the verdict was against the weight of evidence.

The evidence so clearly supports the verdict that the motion for a new trial should be dismissed.

The accident happened at 20th and Parrish Streets— Gertrude A. Phillips being a passenger who was about to alight from a trolley car.

In the statement of claim the plaintiff avers that the trolley car was negligently caused to jerk and lurch after the doors had been opened, throwing plaintiff into the street.

There may have been a little hesitancy about plaintiff's testimony as to whether the car jerked before or after the doors were opened, but this is a matter for the jury to reconcile. She said she had been standing on the floor of the car opposite the centre doors; had not stepped down from the floor of the car, and the sudden jerk caused her to fall and at that time the exit doors were opened and she fell to the street.

There was testimony indicating that at some time she had made a statement that the reason for her fall was the moving of the step at the centre door, and that she made no reference to the jerk to which she testified at the trial. But it is clear that this testimony had to be submitted to a jury. See Sanson v. Philadelphia Rapid Transit Co., 239 Pa. 505, 508, 509.

In considering the motion for judgment n.o.v. we are obliged to note that plaintiff testified that she was at the exit before the car stopped and before it reached the corner; that she had stepped down the exit step before the door opened, but in this she was not entirely clear, because another question immediately asked her was:

"Q. Had you stepped down that step?

A. No, sir.

Q. You were still standing on the main platform of the car, that is the main floor of the car?

A. Yes, sir.

Q. And was the car moving or standing still when the doors opened?

A. The car was still but it gave a jerk when it opened the door and threw me out.

Q. Which happened first, the jerk of the car or the opening of the doors?

A. That I could not tell you."

She testified that the door was opened and the jolt threw her out, but she could not clearly say whether the jerk took place before or after the doors were opened. She described the jerk as "a hard jolt" that threw her out, and it was a sudden stop.

In answer to questions by Mr. Price, she said that the jerk was when the car stopped; that it was going forward and suddenly stopped, and that was what made the jerk.

For safe operation the car stop should be made before opening the doors, and the jury could have found an element of negligence where the doors were opened before a safe stop was made and with a passenger in a position to alight. Custom and practice require one to present himself or herself at the exit before the car reaches its stop, and it would be unsafe under those circumstances for the doors to be opened when defendant's agents know that the frequent sudden stops which are made in the operation of the car would greatly increase the danger to one in that position if the doors were not closed at the time so as to keep one from being thrown to the street.

Defendant offered no explanation as to why the door was open at the time of the jolt. We think the case of plaintiff was sufficient to require some explanation.

Merely reading the transcript of the testimony does not permit the same opportunity to judge the witness' veracity that the jury has when hearing her testimony. As a witness she was in a position unusual to her, she was rather elderly and nervous, so that, making allowances for these things, a jury could very well believe

that she clearly established the negligence of defendant without revealing any contributory negligence on her part. Page 3 of the notes of testimony shows her testimony to be quite clear, where she says she attempted to alight at 20th and Parrish Streets; that she got up and got hold of the wooden rail on the right-hand side; that she had a small package of rolls and her pocketbook in her left hand, and was ready to get out when the car came to a sudden stop and threw her out. She was standing on the top platform; had not stepped down at all; had not tripped, and had not stumbled.

She said no one was in front of her getting off, and she attributed her fall to the sudden jerk of the car; that she landed in the street, as a result of which her left hand, elbow, and arm were fractured.

On behalf of the motion for judgment n. o. v. defendant argues that the testimony shows the accident to be of a nature characteristic in cases which he states as "contrary to human experience" and "judicially known to be incredible". We do not so understand the situation. If she had her right hand on the wooden rail and was facing the exit, and the car made a very sudden jerking stop, it does not necessarily follow that she would have been thrown toward the front of the car; certainly the fact that she was holding on to the rail with her right hand might well have had the effect of unbalancing her in a direction towards the open doors. This was a question for the jury.

We do not think that this case necessarily turns on the sudden jerk cases alone. Of course in the sudden jerk cases, the jerk must be an unusual jerk, and to determine whether or not the jerk is unusual the effect on other passengers in the car is considered. Another principle in connection with the jerk cases is that where plaintiff has assumed a position, such as sitting at the extreme end of the long seat (Endicott v. Philadelphia Rapid Transit Co., 318 Pa. 12), there is contributory negligence. But, in the instant case this

woman was where she was required to be; that is, standing at the exit to leave the car, when it was clearly negligent to open the door before a safe stop had been made. The case then is much like Sanson v. Philadelphia Rapid Transit Co., supra, and Jenkins et ux. v. Beyer et al., 118 Pa. Superior Ct. 527.

In the Sanson case the passenger had given notice to the conductor to stop and believed the conductor recognized the signal. He waited until the car began to slow down, then reached out and took hold of the handle of the rear door. The car continued to slow down, he arose from his seat, still holding the handle on the door and stood in the open doorway waiting for the car to stop so that he could safely alight. While he was standing in that position, the speed of the car was suddenly increased with an unusual jump or jerk, which caused him to be thrown from the open doorway. The court sustained a verdict for plaintiff.

In the Jenkins case the passenger was a minor, and as the car approached its stop he moved to the platform beside the operator. The operator opened one of the doors while the car was still in motion and then applied the brakes in such a sudden and violent manner, and with such force, that the deceased, as a result of the jolt, was thrown several feet off the car. The Superior Court sustained the verdict.

In the instant case this woman was a passenger who had assumed a position close to the conductor, and there is no doubt that he knew she was about to alight. Her testimony as to the character of the jolt would sustain the deduction that it was strong enough to throw her through the open exit doorway. Such a jolt, under the circumstances, considering her intention to alight and the position in which she was standing, could not be classed as an ordinary operating jolt.

Wherefore, the motions for new trial and for judgment n. o. v. are dismissed.