Coyle *v.* Pittsburgh Railways Company, etc.,
Appellant.

Argued May 1, 1942.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY,
JJ.

*James R. Orr*, with him *J. R. McNary*, for appellant.

*Saul Chersky*, with him *Mayer Sniderman*, for ap-
pellee.

OPINION BY KENWORTHEY, J., July 23, 1942:

On February 14, 1941, about 5:30 P.M., plaintiff
boarded one of defendant's street cars in the City of
Pittsburgh. He was his only witness. His testimony

is summarized in his History of the Case as follows: "In anticipation of the starting of the car, the plaintiff, who was standing, the car being crowded, took a firm grip with his left hand on the handle built into a cross seat, but the violent start caused his grip to be torn loose from the handle and he was thrown backward ...... and his left arm injured." He also said "other passengers lurched," although he "was the only one that was thrown so violently."[1]

The judgment for plaintiff must be reversed.

It has been the rule of this Commonwealth for at least twenty-five years[2] that such evidence is not sufficient to prove the negligence of the carrier. It has been applied in a line of cases unbroken save as in such cases as *Sanson v. Philadelphia Rapid Transit Co.*, 239 Pa. 505, 86 A. 1069, and *Jenkins et ux. v. Beyer*, 118 Pa. Superior Ct. 527, 180 A. 135, where the start or stop was so violent as to throw the passenger out through a door onto the street, or as in *Tilton v. Philadelphia Rapid Transit Co.*, 231 Pa. 63, 79 A. 877, where plaintiff was thrown off the seat.

To the casual observer, the rule may appear harsh; the operator of a public conveyance may, in a particular case, be careless, yet it be impossible for the passenger to prove it. Perhaps, even, this is such a case. But to him who would explore the underlying purpose of the rule, it will become apparent that the rule is one of necessity. A street car company is a public servant. Its duty is to furnish the most rapid transportation possible commensurate with safety. Reduction of time consumed in the enormous number of starts and stops

---

[1] He had previously stated that others "were thrown violently," but there was no evidence any of them were thrown to the floor or were injured.

[2] *Uffelman v. Philadelphia Rapid Transit Co.*, 253 Pa. 394, 98 A. 574. Compare *White v. Columbia and Montour Electric Ry. Co.*, 215 Pa. 462, 64 A. 676.

required by a street car in a large city is a vital factor in the performance of the service. Its proper performance is bound to involve some risk which, of course, must not be unreasonable. Every rider knows that to' keep one's feet in a moving street car, whether it be stopping, starting, going around a curve or traversing a not quite straight portion of track, requires alertness and a certain regard for balance. And if every person thrown and injured in a street car could recover damages on proof merely that he was "violently" thrown, the resulting burden on the carrier would be unbearable. See *Smith v. Pittsburgh Railways Co.,* 314 Pa. 541, 171 A. 879.

The judgment is reversed and entered for defendant.