## Bollar, Appellant, *v.* Pittsburgh Railways Company.

Argued April 30, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Herbert B. Lebovitz,* for appellant.

*Earl W. Brieger* and *J. R. McNary,* for appellee, were not heard.

OPINION BY STADTFELD, J., July 21, 1943:

This is an appeal by plaintiff appellant from an order of judgment non obstante veredicto for defendant where a verdict was rendered by a jury in favor of plaintiff in an action of trespass for personal injuries alleged to have been sustained by him while a passenger in a street car operated by defendant company.

The facts are correctly stated in the opinion of the court below (McBride, J.) from which we quote: "The plaintiff, a Baptist minister, was at the time of the trial ninety years of age. On the afternoon of February 2, 1941, he and two other ministers were preaching at Trafford City. About six P. M., the three of them boarded a modern type street car in East Pittsburgh. Plaintiff was the last to board the street car. He stopped at the fare box to look for his street car pass, first placing a brief case on the floor at his feet. The fare box was surrounded by a metal railing. While he was searching in various pockets with both hands for his pass the street car proceeded a distance of one-third of a block or approximately one hundred feet. The plaintiff stated that as he was standing and looking for his pass, the street car stopped on the spur of the moment. He was thrown forward against the fare box, and

caught the window frame in front of him with his left hand in order to keep from going through the window pane. His left groin came in contact with the fare box. The two ministers who had preceded him had seated themselves on the left side of the street car in a seat running lengthwise with the car between two metal rods approximately three feet apart. When the street car was brought to a sudden stop they testified that they were thrown forward and jammed against the metal rod. One of these men testified that when the street car stopped he observed Rev. Davis fall over the money change box; his hands were up against the window frame.

"The defendant in his motion for judgment n.o.v. contends that the plaintiff was guilty of contributory negligence, for the reason that he did not support himself while looking for his pass, and also that there was no negligence shown on the part of the defendant."

Plaintiff himself testified that the street car stopped on the spur of the moment, and that it came to a sudden stop. He testified that he did not know why the street car had stopped.

Al Herd, a witness called by the plaintiff, testified that the car stopped "all of a sudden." He testified that the street car was going thirty-five (35) miles per hour, and that it made a violent stop after the street car had travelled about one-third (⅓) of a block from where it had picked up the passengers.

Clarence Gillyard testified that the street car made a sudden stop, and said that the street car was going pretty fast.

Both Mr. Herd and Mr. Gillyard testified that they were seated on the seat running lengthwise along the left side of the street car, between the end of the seat and the upright rod. Mr. Herd testified that he was thrown sidewise about a foot and a half against the rod, and that Mr. Gillyard was thrown against him. Mr. Gillyard corroborated this testimony.

This testimony constitutes the entire evidence of the plaintiff as to negligence on the part of defendant.

The defendant called as a witness the operator of the street car, who testified that he had stopped the street car at the regular stop, and had travelled approximately one hundred (100) feet, when an automobile without lights had pulled from a side street directly in the path of the street car, and that he applied his brakes. He testified that he applied the air brakes only and not the emergency brake. He testified that the accident occurred in the heart of East Pittsburgh on February 2, 1941, around six o'clock in the evening.

The plaintiff has failed to show such an unusual and extraordinary stop, as would raise any presumption of negligence on the part of the defendant. The fact that it was sufficient to cause a standing passenger to lose his balance, or to cause a passenger sitting on a lengthwise seat to be thrown against an upright, is not sufficient evidence under the cases decided by the appellate courts of Pennsylvania. Furthermore, the defendant has gone further and shown a reason for the stop, and there is no testimony to contradict him.

In the case of *Smith v. Pittsburgh Railways Co.*, 314 Pa. 541, 171 A. 879, in an opinion by Mr. Justice DREW, the Supreme Court said: "It is true that in the instant case plaintiff testified on direct examination that a man sitting across from her was 'jolted out of his seat,' but on cross-examination she admitted that he 'didn't leave his seat or go out of his seat,' but was simply 'jolted about.' This goes no further than the statement in the *McClusky* Case, supra (105 Pa. Superior Ct. 275, 161 A. 424), that 'everybody in the car lurched,' which was held insufficient to establish negligence on the part of the motorman, and properly so."

In the case of *Endicott v. Philadelphia Rapid Transit Co.*, 318 Pa. 12, 177 A. 17, the court recognized that one sitting on a lengthwise seat would be apt to be jolted by an ordinary stop of the street car. In dis-

cussing the case, the court said: "In the instant case plaintiff was at the front end of one of the side seats, facing across the car, with her right side, upon which she fell, toward the front of the car. In her situation an ordinary jolt or jerk, such as is incident to the usual operation of a street car, would be sufficient to topple her out of her seat, whereas the occurrence in the *Tilton* case could have been caused only by an extraordinary jolt or jerk. The fact that several passengers who were standing 'whirled around' or 'twirled around' on the straps cannot be said to be sufficient to show an extraordinary jolt or jerk of the car. A happening of this kind is such a commonplace one that it seldom attracts attention. Likewise, the testimony that the passengers on the side seats (and it is clear that those are the ones referred to) 'pushed forward' or 'jostled up' against each other does not show that the stop was of an unusual or extraordinary nature."

The case of *Hufnagal v. Pittsburgh Railways Co.*, 345 Pa. 566, 29 A. 2d 4, reviews with approval the case of *Smith* v. *Pittsburgh Railways Co.*, supra. and *Endicott v. Philadelphia Rapid Transit Co.*, supra, and held that testimony that the plaintiff was thrown to the floor of the car by the very violent lurch, and that the jerk was so violent that there seemed to be a little confusion in the car, people slipping about in their seats, and that the jerk knocked a package off his lap, was also insufficient to establish negligence on the part of the railways company. In that case a judgment for the plaintiff was reversed and entered for defendant.

In view of our conclusion that the evidence did not disclose any negligence on the part of defendant, it is unnecessary to discuss at any great length the question of contributory negligence.

The plaintiff testified: "I was looking for my pass through my undercoat and my undersuit someplace, and the motorman had to go, so I kept looking and he came to a certain place and he stopped.

".......I was standing with my grip in front of me." He was looking through his overcoat and undercoat for his pass, and also using both hands to do this, when the accident occurred.

The operator of the street car, who was called by the defendant, testified that the plaintiff was standing near the fare box, and that there was a railing within easy reach of him. The fact that the plaintiff was standing in a street car and was using both hands to look for his street car pass without making any effort to hold onto the guard rail, or other supports provided by the defendant, convicts him of negligence as a matter of law.

In the case of *Staller v. Philadelphia Rapid Transit Co.*, 339 Pa. 100, 14 A. 2d 289, the Supreme Court held that the appellant's own evidence convicted him of contributory negligence as a matter of law, where he stood up unsupported in front of his seat. His failure to use hand straps to support him, as shown by a photograph introduced by the defendant, contributed to the accident to such an extent that the jury should have rendered a verdict for the defendant. The court, in that case, affirmed the action of the lower court in entering judgment upon the whole record for the defendant.

The lower court relied on the case of *Cook v. Philadelphia Rapid Transit Co.*, 120 Pa. Superior Ct. 565, 182 A. 755. This case is directly in point both as to the question of negligence on the part of the defendant, and contributory negligence on the part of the plaintiff. In that case Judge BALDRIGE said: "We do not see that there was a want of care in the motorman's suddenly stopping the trolley when he was aware that something had collided with it. It would seem that that was just what an alert motorman should have done. Prompt action was required of him in the performance of his duty. Passengers, standing or walking in moving cars, should protect themselves from a sudden jolt or fall by firmly holding to handles, straps, etc.

provided for that purpose. In the busy streets of a city, where there are numerous automobiles, as was shown here, passengers on trolley cars must realize that contingencies may arise requiring a motorman to apply the brakes quickly to stop his car, to avert possible injury to the passengers or those using the highways. The consequence of failure to stop in the case at bar might have been as grave as if the automobile had been driven suddenly into the immediate path of the trolley. Certainly, in such event, the motorman could not be convicted of negligence if it was necessary to avoid a collision."

We see no error which would warrant a reversal of the judgment.

Judgment affirmed.