**MYERS v. KAUFMANN DEPARTMENT STORES, Inc.**

**Civil Action No. 2450.**

District Court, W. D. Pennsylvania,
Nov. 14, 1944.

Sanford M. Chilcote and Dickie, Robinson & McCamey, all of Pittsburgh, Pa., for plaintiff.

John H. Sorg, of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge.

Plaintiff is suing to recover damages for personal injuries alleged to have been received by her when she fell in defendant's store as she was walking down a moving escalator. The trial resulted in a verdict in her favor for $3116.

Defendant has moved for judgment non obstante veredicto in its favor, or in lieu thereof, for a new trial alleging that the verdict is excessive.

The facts developed at the trial are briefly these: Plaintiff stepped onto a moving escalator at the 7th floor to go to the 6th floor of defendant's store. This escalator was fourteen inches wide, equipped with handrails which moved with the steps. She could have stood still on this escalator and have been safely conveyed to the 6th floor. But she elected to walk down the moving steps without making any use of the handrails moving with the steps, provided to support persons using the escalator (R. pp. 17, 18). Plaintiff also admits (R. pp. 17, 18) that had she stood still on the step where she entered the escalator, nothing would have happened to her whether she had held onto the handrail or not.

The plaintiff described what happened to her as follows (R. pp. 4–6):

"Q. And at the time this accident occurred, where were you in the store? A. Between the seventh and sixth floor on the escalator.

"Q. And what were you doing on that escalator? A. I was descending, like any normal pair of stairs, to get me to the sixth floor. I intended to leave the store immediately.

"Q. Was that escalator moving or was it stopped? A. It was moving.

"Q. And how far had you gone down the escalator at the time this event happened? A. Well, I had gotten on at the seventh floor and had gone a short distance,

and I was on the second step and about to take the third step when I had the accident.

"Q. Now, will you tell us just what happened when you, as you say, were about to take the third step? A. Well, in taking the third step, I had placed my left foot firmly on the third step and in so doing the step shifted or lurched, a motion somewhat like jello would be; it shifted a little to the right and to the left, and tilted somewhat forward. So it was a complete unnatural movement of the whole step.

"Mr. Sorg: I ask the last part of the answer.be stricken out as to the complete unnatural movement of the whole step. We are talking about an escalator, and if there was anything wrong with that step, I don't think this lady is qualified to state what the condition of the step was.

"The Court: That, of course, is a conclusion of the witness. So far as she is able, she can describe what she saw on the step.

"Mr. Sorg: She has described that the step moved in a jello-fashion, if I understood her correctly.

"The Witness: That. is right.

"Q. And shifted? A. Shifted and lurched.

"Mr. Sorg: That part is all right, but I ask that the last part be stricken.

"The Court: That will be stricken out, and the jury instructed to disregard that, because it is a mere conclusion of the witness and not testimony as to a state of facts.

"Q. What happened when the step did that? A. Well, I lost my balance and I went down immediately.

"Q. At the time the step made this motion as you described, which foot was on the step? A. My left foot was firmly on the step and my right foot was in mid-air, ready to come down on the third step.

"Q. Where was your weight when that happened, the weight of your body? A. It would be on the left foot.

"Q. And then what happened to you at that time? A. As soon as I lost my balance, I fell and wedged myself in between the sides of the escalator." ·

The plaintiff, as she attempted to walk down the moving steps of the escalator, wore high-heeled shoes, "about a two and one-half or three-inch heel in height."

After the accident, the plaintiff walked to Donahoe's store where she was employed and then took a street car home. She lost no time at her work at Donahoe's after the accident.

On these facts we are unable to see that plaintiff has made out a case. Plaintiff offered no evidence that the alleged shifting of the step in question was due to any defect in the mechanism or construction of the escalator, nor that it was in any way different from the motion of any other step or steps thereof.

Negligence is never presumed. It cannot be determined by speculation or conjecture. Plaintiff offered no evidence that there was anything unusual or improper in the alleged shifting of the step in question, or anything different from the motion of any other step or steps of this escalator.

It seems to us the ordinary rule applicable to common carriers is likewise applicable to an escalator carrier; i.e., that the plaintiff must affirmatively establish. that the accident was caused "by something connected with the means * * * of transportation, such as defective tracks, cars, machinery, or motive power," or that the occurrence complained of "was of an unusual and extraordinary character." See DuPont v. Pennsylvania Railroad Co., 337 Pa. 89, 10 A.2d 444, 445, 129 A.L.R. 1337; Tucker v. Pittsburgh Railways Co., 153 Pa. Super. 63, 33 A.2d 441, 442; Hufnagel v. Pittsburgh Railways Co., 345 Pa. 566, 29 A. 2d 4, 5; Zaltouski v. Scranton Railway Co., 310 Pa. 531, 165 A. 847.

In the very recent case of Mervine v. Aronomink Transportation Company, reported in 348 Pa. 475, 35 A.2d 255, page 256, the Pennsylvania Supreme Court said:

"A passenger, walking or standing in a moving conveyance * * * must exercise ordinary foresight and common knowledge, and recognize the inherent danger of loss of equilibrium, and guard against that possibility and its consequences. It is only for unusual and extraordinary occurrences, such as could not reasonably be anticipated and prevented, that recovery is allowed in cases of this kind."

We find no evidence in this case that will bring it within this rule.

In addition, we are of the opinion that under the undisputed facts in this case, the plaintiff is guilty of contributory

negligence as a matter of law. The escalator was equipped with handrails that moved with the steps, and the handrails were easily within her reach. Then, too, she elected not to ride the escalator, but rather to walk down the moving steps. She admitted she made no attempt to use the handrails, although nothing prevented her from doing so. She also admitted that had she not attempted to walk down the stairs, no accident would have befallen her (R. 17, 18). Thus the plaintiff, when descending this escalator, was provided with a safe way, but chose, however, a hazardous method by attempting to walk rather than to ride.

A recent Pennsylvania case of Bollar v. Pittsburgh Railways Co., reported in 153 Pa.Super. 199, 33 A.2d 261, supports our view. The plaintiff was standing at the fare-box of a street car, which was surrounded by a metal railing. Instead of using the railing, he was searching his pockets for his pass when the street car made a sudden stop, causing the plaintiff to fall against the railing. The Court of Common Pleas entered judgment for the defendant, non obstante veredicto. The Superior Court, in its opinion, stated on page 263 of 33 A.2d:

"The fact that the plaintiff was standing in a street car and was using both hands to look for his street car pass without making any effort to hold onto the hand rail, or other supports provided by the defendant, convicts him of negligence as a matter of law."

The appellate courts of Pennsylvania have uniformly held that it is negligent for a person to place himself in a position of danger when a position of safety is equally available to him. See Weiner v. Philadelphia Rapid Transit Co., 310 Pa. 415, 165 A. 252, 255; Levitt v. B. & G. Sandwich Shops, Inc., 294 Pa. 291, 144 A. 71; Boyd v. Kensington Water Co., 316 Pa. 522, 175 A. 395; Tharo v. Pennsylvania R. R. Co., 332 Pa. 233, 2 A.2d 695.

We therefore conclude that the plaintiff in this case is guilty of contributory negligence, and is not entitled to recover. Therefore, a judgment will be entered in favor of plaintiff on defendant's motion to set aside the verdict, and another judgment will be entered in favor of the defendant in accordance with the defendant's motion for a directed verdict. An order may be submitted accordingly.