## Schilling, Appellant, *v.* Pittsburgh Railways Company.

Argued October 8, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

*Samuel J. Goldstein,* for appellants.

*Leo Daniels,* with him *Prichard, Lawler & Geltz,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 10, 1958:

On January 3, 1955 Ruth Farrington and Margaret R. Schilling were passengers on a trolley car of the Pittsburgh Railways Company enroute from Homestead to Pittsburgh, Pa. Mrs. Farrington had boarded the trolley car in Homestead at approximately 7:30 p.m. and was seated on the right-hand side of the trolley car looking forward. Margaret R. Schilling, who had boarded the trolley car in Glenwood, Pa., was seated next to Mrs. Farrington and was engaged in conversation with her. At approximately 7:45 p.m. at a point between Flowers and Hazelwood Avenues, Pittsburgh, Pa., the trolley operator brought the car

to an alleged sudden and abrupt stop. Mrs. Farrington was thrown forward striking her right arm and shoulder on one of the stanchions fixed at regular intervals along the trolley and running from the floor to the ceiling. Mrs. Schilling, who at the time was standing at the front of the car preparatory to disembarking at Hazelwood Avenue, was holding on to an iron rail with her left hand and on to the fare box with her right hand. When the car stopped, Mrs. Schilling's right hand was wrenched from the fare box and the back of her body came in contact with the front of the car.

Separate suits were instituted by Mrs. Farrington and Mrs. Schilling and her husband, John J. Schilling, appellants, against the Pittsburgh Railway Company, appellee. Both suits were consolidated for trial and, at the completion of the appellants' testimony, the trial judge entered compulsory nonsuits in both actions. The court en banc sustained the trial judge and refused to remove the compulsory nonsuits. From that action, these appeals were taken.

Appellants rely on certain evidence to establish negligent conduct on the part of appellee: (1) that the trolley car was seven minutes late; (2) that the car was "swaying" as it proceeded along Second Avenue between Flowers and Hazelwood Avenues; (3) that there was a bump or thud indicative of a contact between the trolley car and something outside the trolley car, followed by the application of the trolley's brakes and the stopping of the car within a matter of seconds. It is to be noted that the appellant, Mrs. Farrington, was not thrown from her seat by the sudden stoppage of the trolley car.

Mrs. Schilling testified on direct examination that as the trolley car proceeded along Second Avenue it "was sort of swerving back and forth a little bit side-

ways" and that when the motorman "jammed on the brakes" there was a "terrific jolt" but she was not able to state what caused the motorman to jam on the brakes. Mrs. Farrington testified that the "street car was swaying back and forth at different intervals going in and in between this particular place here, there was like a thud or a bump . . ."; that "whatever it was that the thud was, or whatever it was, something that was struck or hit, it [the trolley] didn't stop right then. But just within seconds the motorman jammed the brakes on real quickly." On cross-examination Mrs. Farrington stated that she believed that the thud was either something striking the trolley car or the trolley car striking something. Counsel for appellants attempted to qualify Mrs. Farrington to testify on the question of the speed of the trolley car, but the court below refused her testimony as to speed on the ground that the witness was unable to testify as to speed in terms of miles per hour but only as to whether the speed was unusual or excessive. While we believe that the action of the trial court in excluding such testimony was eminently correct, yet, even if it were error, such error was rendered harmless by the action of appellants' counsel in withdrawing of record all interrogation relative to the question of speed. The record is therefore barren of any testimony as to the speed of the trolley car before or at the moment of the sudden stoppage.

In *Staller v. Philadelphia Rapid Transit Co.*, 339 Pa. 100, 103, 14 A. 2d 289, in reiterating a long and well established rule applied in public carrier abrupt stopping and starting cases, we stated that: "It is well established by a long line of decisions that testimony indicating that a moving trolley car jerked suddenly or violently is not sufficient, of itself, to establish negligence in its operation. There must be a showing of

additional facts and circumstances from which it clearly appears that the movement of the car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation, and nothing short of evidence that the allegedly unusual movement had an extraordinarily disturbing effect upon other passengers, or evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the unusual character of the jolt or jerk, will suffice." See also: *Hufnagel v. Pittsburgh Railway Co.*, 345 Pa. 566, 568, 29 A. 2d 4; *Herholtz v. West Penn Railways Co.*, 362 Pa. 501, 503, 504, 66 A. 2d 839.

The instant record fails to fulfill the requirements of the quoted rule and to substantiate appellants' allegations as to the extraordinary character of the stop. As indicated in the *Staller* case, supra, conclusionary statements as to the manner of stopping, such as the testimony in the instant record that the trolley car stopped with a "terrific jolt" or "real quickly", are insufficient to establish the unusual or extraordinary nature of the stop. There is no evidence of *any*, let alone excessive, speed of the trolley car, nor of any extraordinarily disturbing effect of the stop on other passengers.[1] The only evidence offered in support of appellants' allegations is Mrs. Farrington's statement that she was thrown into a stanchion, and Mrs. Schilling's statement that she was spun around against the front of the trolley. Neither woman was thrown off her feet nor on to the floor of the vehicle. The statement of the Court in *Bollar v. Pittsburgh Railways Co.*, 153 Pa. Superior Ct. 199, 202, 33 A. 2d 261, is most apposite: "The plaintiff has failed to show such an

---

[1] It appears from the record that at least one other passenger alighted at the Hazelwood stop with Mrs. Schilling.

unusual and extraordinary stop, as would raise any presumption of negligence on the part of the defendant. The fact that it was sufficient to cause a standing passenger to lose his balance, or to cause a passenger sitting on a lengthwise seat to be thrown against an upright, is not sufficient evidence under the cases decided by the appellate courts of Pennsylvania." Under these circumstances, the court below properly concluded that the evidence of the effect of the stop on appellants failed to meet the burden of demonstrating its excessive or violent nature.

The fact that it might be inferred from appellants' testimony[2] that the trolley car struck or was hit by some object outside of the vehicle does not warrant a presumption of improper operation on the part of the motorman. In cases such as the present case, where appellants are relying on the "sudden stop" doctrine, the unusual or extraordinary character of the stop must be shown before the transit company is required to produce a reasonable and satisfactory explanation for the actions of the operator. *Shedlock v. Wyoming Valley Autobus Co.*, 340 Pa. 377, 17 A. 2d 384; *Di Paolo v. Philadelphia R. T. Co.*, 101 Pa. Superior Ct. 254. A vehicle may be stopped after colliding with an object extraneous to it, but still not be stopped with such an extraordinary and violent motion as to be beyond a passenger's reasonable anticipation so as to warrant a presumption of negligence on the part of the motorman. *Bollar v. Pittsburgh Railways Co.*, supra;

---

[2] In fact, appellants' testimony tends to indicate that the stoppage of the trolley car was due to something unconnected with the means or appliances of transportation: *Welsh v. Jump House Wrecking Co.*, 306 Pa. 228, 159 A. 170; *Shedlock v. Wyoming Valley Autobus Co.*, 340 Pa. 377, 17 A. 2d 384; *Wilson v. Butler Motor Transit Co.*, 368 Pa. 479, 84 A. 2d 207; *Cook v. Philadelphia Rapid Transit Co.*, 120 Pa. Superior Ct. 565, 182 A. 755.

*Cook v. Philadelphia Rapid Transit Co.,* 120 Pa. Superior Ct. 565, 182 A. 755. As the court stated in the *Cook* case, supra, at 569: "We do not see that there was a want of care in the motorman's suddenly stopping the trolley when he was aware that something had collided with it. It would seem that that was just what an alert motorman should have done. Prompt action was required of him in the performance of his duty. Passengers, standing or walking in moving cars, should protect themselves from a sudden jolt or fall by firmly holding to handles, straps, etc., provided for that purpose. In the busy streets of a city, where there are numerous automobiles . . . passengers on trolley cars must realize that contingencies may arise requiring a motorman to apply the brakes quickly to stop his car, to avert possible injury to the passengers or those using the highways." *Ginsberg v. Philadelphia Rapid Transit Co.,* 66 Pa. Superior Ct. 118; *Di Paolo v. Philadelphia Rapid Transit Co.,* 101 Pa. Superior Ct. 254; *Herholtz v. West Penn Railways Co.,* 362 Pa. 501, 66 A. 2d 839 are readily distinguishable from the instant situation.

The "sudden stop" of this trolley car did not give rise to any justifiable inference of negligence in the manner of operation of the trolley car and appellants have failed to prove either the violent nature of the stop or that the circumstances surrounding the stop indicated the stop was extraordinarily or unusually violent.

Judgments affirmed.

Mr. Justice MUSMANNO dissents.