## Angelo *v.* Pittsburgh Railways Company, Appellant.

Argued April 15, 1959. Before RHODES, P.J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN and WATKINS, JJ.

*Con F. McGregor,* for appellant.

*Murray S. Love,* with him *Wirtzman and Sikov,* for appellees.

OPINION BY WRIGHT, J., June 10, 1959:

On December 4, 1954, Mrs. Josephine Angelo sustained injuries while a passenger in a bus of the Pittsburgh Railways Company. She and her husband, Louis Angelo, instituted a trespass action which resulted in verdicts for the plaintiffs. Defendant's motion for judgment n.o.v. was refused by the court en banc, one

576

judge dissenting. Judgments were entered on the verdicts, and defendant has appealed.

The record discloses that Mrs. Angelo boarded the bus at a regular stop in front of the New Diamond Market in the City of Pittsburgh. The bus then proceeded in a northerly direction approximately 100 feet down Diamond Street to the corner of Market Street. Since the bus was crowded, Mrs. Angelo stood in the right front portion, grasping an upright pole which was located in front of the side seat. It was about 5:00 p.m., the afternoon rush hour. The city was thronged with Christmas shoppers and there was considerable traffic. In the words of Judge NIXON: "The scene of the accident is a very congested area, the buildings close to the narrow streets, pedestrians crowding around the open air markets, making it difficult to ascertain whether another vehicle is approaching on the side street until very close to its intersection. No one should know this better than a bus driver who travels the route frequently". As the bus reached the intersection of Diamond and Market Streets, it swerved suddenly to the left and made a violent and unusual stop. Mrs. Angelo's grasp was broken, and she was thrown against the pole. The bus operator testified that he had swerved the bus in order to avoid a collision with another vehicle [1]. There was no physical contact between the bus and the other vehicle. Although the testimony shows that the other vehicle stopped, the bus operator failed to obtain any identification.

[1] "After I loaded the bus, I glanced up and saw the light started—changed green, so I started down Diamond Street, and as I came to the intersection I saw a car coming up Market Street. Whether he knowed there was a light there or not, I don't know, but he was driving with no visible signs he had any intention of stopping, so I applied my brakes. The people in the bus started to surge forward. To keep anybody from falling . . . I let up on the brakes, pulled to the left of the intersection and stopped again".

As stated by appellant, the question involved on this appeal is whether there was sufficient evidence of negligence to submit to a jury. In this connection there can be no doubt that proof of the sudden and unusual jolt in the operation of the bus made out a prima facie case and raised a presumption of negligence. This is the law even in street car cases, *Miller v. Pittsburgh Rwys. Co.*, 187 Pa. Superior Ct. 334, 144 A. 2d 514, although it has been stated that street cars are not held to the strict rule of control which attaches to motor vehicles: *Kelly v. Philadelphia Transportation Co.*, 146 Pa. Superior Ct. 445, 23 A. 2d 57. Appellant concedes that there was a sudden and unusual jolt, which affected not only the plaintiff but other passengers as well, but contends that the uncontradicted testimony of the bus operator establishes the exercise of due care on his part.

In support of its position, appellant cites and relies upon the following cases: *Cook v. Philadelphia Rapid Transit Co.*, 120 Pa. Superior Ct. 565, 182 A. 755; *Kelly v. Philadelphia Transportation Co.*, supra, 146 Pa. Superior Ct. 445, 23 A. 2d 57; *Wilkerson v. Pittsburgh Railways Co.*, 309 Pa. 381, 163 A. 909; *Zaltouski v. Scranton Railway Co.*, 310 Pa. 531, 165 A. 847. In each of those cases plaintiff was a passenger in a street car which was proceeding on a fixed track. The injuries were caused, not by any unusual manner of operation of the street car, but by the striking of the street car by another vehicle. The significant difference in the case at bar is that plaintiff's injuries were caused by the unusual manner of the operation of the bus. It is our view that recovery cannot be denied as a matter of law merely because the oral testimony of the bus operator tended to absolve him from negligence. We agree with the court below that, on this record, the issues whether or not there was a sudden emergency, whether such sudden emergency was created in part by the conduct

of the bus operator, and whether or not he exercised proper judgment under the circumstances, presented questions for determination by the jury.

A carrier is bound to exercise the highest practical degree of care, and if a passenger is injured as the result of the manner of operation of the carrier, the burden is upon the carrier to show that the injury could not have been prevented by such care: *Bickel v. Reed*, 118 Pa. Superior Ct. 335, 179 A. 762. In that case it was held that the issue whether the driver of a taxi cab used the proper degree of care demanded by the circumstances was a question of fact for the jury. "When the driver of an automobile claims that he has been subjected to a sudden emergency in driving on the highways, to enable him to claim the benefit of this rule, it must appear that he was not driving in a reckless or careless manner, but with due regard to the condition of the highway and the traffic. One driving carelessly cannot say he was placed in sudden peril. If driving in a careful manner, the peril would not have arisen. The question, therefore, is usually one for the jury to determine, under proper instruction": *Casey v. Siciliano*, 310 Pa. 238, 165 A. 1.

A factual situation markedly similar to that in the case at bar was presented in *Shedlock v. Wyoming Valley Autobus Co.*, 340 Pa. 377, 17 A. 2d 384. Plaintiff was a passenger on defendant's bus, which swerved suddenly to the left and came to a violent stop. The theory of the defense was that a car had pulled out from the curb in front of the bus. It was argued on appeal that the necessity for the conduct of the bus operator was so fully explained and justified that the question of negligence should not have been submitted to the jury. In rejecting that contention, the Supreme Court made the following pertinent statement: "In such instances, the general rule that when proof of a

fact depends upon oral testimony it is exclusively the province of the jury to decide, under instructions from the court as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if the verdict is deemed contrary to the weight of the evidence, is particularly applicable. . . Thus, even conceding the adequacy of appellant's exculpatory evidence, if believed, to relieve it of the charge of negligent operation, the case was, nevertheless, clearly one for the jury". See also *DiPaolo v. P. R.T. Co.,* 101 Pa. Superior Ct. 254.

It should be further noted that, in the instant case, the bus was approaching an intersection. Assuming arguendo that the traffic light was green for the bus, which was in itself a jury question, such a signal is merely a qualified permission to cross, not a command, and the qualification is to proceed lawfully and carefully. The duty to exercise the highest degree of care at street intersections has not been relaxed by the introduction of traffic officers and signal lights: *Byrne v. Schultz,* 306 Pa. 427, 160 A. 125. And see *Lewis v. Quinn,* 376 Pa. 109, 101 A. 2d 382. We are clearly of the opinion that the trial judge did not err in submitting the question of negligence to the jury.

Judgments affirmed.