**Leslie ASBURY, Appellant**

v.

**PORT AUTHORITY TRANSIT OF ALLEGHENY COUNTY.**

Commonwealth Court of Pennsylvania.

Argued May 4, 2004.[1]

Decided Dec. 7, 2004.

---

1. This case was reassigned to this author on August 19, 2004.

Paul Hilko, Pittsburgh, for appellant.

Terrance R. Henne, Pittsburgh, for appellee.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Leslie Asbury (Asbury) appeals an order of the Court of Common Pleas of Allegheny County denying her post-trial motions to remove a nonsuit and to grant her a new trial. The trial court granted the Port Authority Transit of Allegheny County's (PAT) motion for a compulsory nonsuit after the trial court concluded that, as a matter of law, Asbury failed to produce sufficient evidence at trial that PAT was negligent in causing her to fall while riding a PAT bus.

Asbury raises the following three issues for this court's review: whether, given her physical conditions at the time of the incident, PAT's bus driver was negligent in moving the bus before Asbury was seated; whether the trial court erred in concluding that she failed to produce sufficient evidence of negligence to satisfy the requirements of Pennsylvania's "jerk or jolt" doctrine; and whether the bus driver failed to comply with a policy of PAT requiring him to distribute witness cards after the accident.

On November 26, 1999, Asbury boarded a PAT bus in order to return home from work. At the time, Asbury was twenty-nine years of age and was thirty-four weeks pregnant. After boarding the bus, Asbury proceeded to a seat. As the bus pulled away from the bus stop Asbury, while not yet seated, lost her balance and fell in the aisle, fracturing the femur bone in her left leg. The bus driver called for medical assistance, and Asbury was transported to a local hospital where she was first treated by Dr. David Neuschwander, an orthopedic surgeon. On the same day, Dr. Neuschwander performed surgery to place a stabilizing rod in Asbury's femur bone, after which she was prescribed a program of physical therapy.

Asbury filed suit against PAT, alleging negligence on the part of the bus driver for placing the bus in motion before she was seated. At a jury trial held in November 2001 Asbury testified that at birth she suffered from clubbed feet and shortened heel cords and that, although surgery had partially corrected the defects, she still had flat feet, walked with a limp and had some trouble climbing stairs. Asbury stated that, as she boarded the bus she was carrying her purse and a knapsack and that she did not speak to the bus driver. Asbury walked down the aisle to the first seat facing the front of the bus. She

placed her belongings on the seat and was in the process of getting ready to sit down when the bus "lurched with a sudden force." More specifically, Asbury testified: "I was grabbing for the bar to keep from falling. It was too late. I landed on my right hip and the force of the fall snapped my femur; left thigh bone." (R.R. at 82a).

Asbury testified that the bus driver summoned an ambulance and that in the interim the remaining passengers, except for a passenger who was trapped by her fallen body, quickly exited the bus. On cross-examination, Asbury acknowledged that she regularly walked the three to four blocks from the bus stop to work and that she did not need the assistance of a cane or walker, but she later noted that she does have trouble with her balance.[2] Asbury agreed that with the coat she was wearing at the time, a casual observer might not see that she was pregnant. Also there were possibly four or five other persons on the bus, but Asbury was unaware of whether any of them had been affected by the sudden lurch of the bus that caused her to fall.

Steven Paskorz, the PAT bus driver, testified that he offers whatever assistance is necessary to blind or wheelchair-bound passengers, but he does not scrutinize each individual for disabilities or special needs. Paskorz further testified that there is no formal policy regarding when a bus driver may begin moving the bus after passengers have boarded, that on the day of the incident there were only a "handful" of people on the bus and that he did not recall anything unusual about Asbury when she entered the bus. After pulling away from the bus stop, Paskorz heard yelling in the bus, at which time he stopped the bus and discovered Asbury laying on the floor. Asbury made no complaints about his driving, but she stated that she had fallen when she reached for and missed a vertical bar. He agreed that the remaining passengers quickly exited the bus; however, he did obtain one "witness card" from the trapped passenger who had remained on the bus.

At the conclusion of Asbury's case, the trial court granted PAT's motion for a compulsory nonsuit. The court concluded that Asbury's suit was governed by what has become known as the "jerk or jolt" doctrine set forth in *Connolly v. Philadelphia Transportation Co.*, 420 Pa. 280, 216 A.2d 60 (1966), and that pursuant to this doctrine Asbury's evidence was insufficient to prove negligence as a matter of law.[3] Specifically, the trial court ruled that As-

2.  The trial court asked Linda Asbury:
    THE COURT: I have one question that I wanted to ask you ... Was your condition with your feet a factor in your falling?
    THE WITNESS: I believe it was.
    THE COURT: Why?
    THE WITNESS: Because I have problems with balance. My balance is not stable. I can walk normally without much difficulty, but if I'm walking just normally, sometimes I tend to veer off balance—sometimes I'll lose footing in normal walking. It doesn't happen all the time. It's known to happen. My balance is not quite as steady as most people." (R.R. at 118a).

3.  In creating the "jerk or jolt" doctrine in *Connolly*, the Supreme Court set forth that

testimony indicating that a moving trolley car jerked suddenly or violently is not, in and of itself, sufficient to establish negligence in its operation. Additional facts and circumstances must be entered into the record from which it is clearly apparent that the movement of the car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation, and that nothing short of evidence that the allegedly unusual movement had an extraordinarily disturbing effect upon other passengers, or evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the unusual character of the jolt or jerk, will suffice. *Connolly* at 283, 216 A.2d at 62.

bury failed to prove that the alleged jerking or jolting of the bus had a disturbing effect on other passengers or that the nature of the accident inherently established the unusual character of the jolting movement. The court denied Asbury's motion to remove the nonsuit.[4]

Citing *LeGrand v. Lincoln Lines, Inc.,* 253 Pa.Super. 19, 384 A.2d 955 (1978), for support, Asbury first argues that the trial court erred in granting the compulsory nonsuit because the bus driver, by pulling away from the bus stop before Asbury was seated, failed to exercise the highest degree of care practical under the circumstances. Asbury maintains that the bus driver should have perceived and accounted for her limp and advanced pregnancy and that he arguably had a duty to wait until Asbury was seated before moving the bus. These circumstances, Asbury asserts, present factual questions that should have gone to the jury.

We disagree. The plaintiff in *LeGrand* was a seventy-year-old woman who was partially blind, wore an eye patch and boarded the bus carrying a suitcase and purse. Not only was she obviously handicapped, but the bus driver apparently accelerated immediately after the woman boarded the bus while she attempted to show the bus driver her Medicare and Social Security cards. The Superior Court stated what it viewed the following legal principle as controlling: "[A] carrier which accepts as a passenger a person known to be affected by either a physical or mental disability which increased the hazards of travel must exercise a greater degree of care for that passenger than is ordinarily required." *LeGrand,* 384 A.2d at 956.

■ Even though the standard and scope of review requires us to consider the evidence and testimony most favorable to Asbury, this Court cannot conclude, based upon the evidence presented in the record, that PAT's driver owed Asbury a heightened degree of care. The difference between the passenger in *LeGrand* and Asbury is that Asbury and the bus driver testified that, when Asbury entered the bus, she did not have any problem ascending the stairs or proceeding down the aisle, that Asbury may not have appeared pregnant through her heavy coat, that she was carrying a considerable amount of baggage and that she did not request that the driver wait until she was seated before proceeding. (R.R. at 111a).[5] On these facts, the trial court did not err in determining that the driver did not breach any duty of care by starting the bus before Asbury was seated.

Asbury next argues that even if the "jerk or jolt" doctrine is deemed controlling in this case, the trial court erred in granting a nonsuit because she submitted evidence sufficient to satisfy the doctrine's requirements and to allow the case to go to the jury. The essence of the "jerk or jolt" doctrine, still good law today, was summarized by the Supreme Court in *Staller v.*

---

4. This Court's review of a trial court's order denying removal of a nonsuit is limited to determining whether the trial court abused its discretion or committed an error of law. *Meussner v. Port Authority of Allegheny County,* 745 A.2d 719 (Pa.Cmwlth.2000). A judgment of nonsuit may be entered only in the clearest cases, and a plaintiff must be given the benefit of all favorable evidence, together with all reasonable inferences of fact arising therefrom, and any conflict in the evidence must be resolved in the plaintiff's favor.

*Pennsylvania Human Relations Commission v. School District of Philadelphia,* 167 Pa. Cmwlth. 1, 651 A.2d 177 (1993).

5. "With me having a full figure and being pregnant, the coat gave me a barrel-shape appearance but that was pretty much it. It was possible that the pregnancy wasn't obvious, but I did have on a thicker coat." (R.R. at 111a).

*Philadelphia Rapid Transit Co.*, 339 Pa. 100, 103–104, 14 A.2d 289, 291 (1940):

> It is well established by a long line of decisions that testimony indicating that a moving trolley car jerked suddenly or violently is not sufficient, of itself, to establish negligence in its operations. There must be a showing of additional facts and circumstances from which it clearly appears that the movement of the car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation, and nothing short of evidence that the allegedly unusual movement had an extraordinarily disturbing effect upon other passengers, or evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the unusual character of the jolt or jerk, will suffice.

Asbury contends that Dr. Neuschwander's testimony regarding the severity of her injury shows that the jolt that caused her to lose her balance and fall must have been of unusual and extraordinary force, thus satisfying the evidentiary requirement set forth in *Staller*. During his deposition, Dr. Neuschwander testified that: "It takes a lot of trauma to break a femur. We usually-most people that slip and fall don't break their femur." (R.R. at 182a). Dr. Neuschwander later repeated: "I mean, like I said before, it takes a lot of force to break a femur. So in terms of exactly how it happened, I'm not exactly clear, but she had enough force to cause a femur fracture, correct." (R.R. at 191a–192a). Dr. Neuschwander testified:

> Q: And what was your diagnosis following your review of the films?
>
> A: She had a mid femur—mid femoral shaft fracture with a butterfly fragment which means she had a fracture in the mid part of her thigh bone with another

piece of the bone broken off at the outer edge.

> . . . .
>
> Q: And the lateral butterfly fragment, how does an injury like that occur?
>
> A: I mean, it takes a significant amount of trauma to break a femur. So I can't tell you for sure. She had a fall, and so she may have had some twisting component or it may have been due to bending movement—or bending injury to her leg, but it takes a lot of trauma to cause a femur fracture.

(R.R. at 163a).

■ Asbury argues that Dr. Neuschwander's testimony satisfies *Staller's* requirement "that the movement of the car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation." *Staller*, 339 Pa. at 103–104, 14 A.2d at 291. A plaintiff may raise a factual question requiring submission of the case to the jury by showing "evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the unusual character of the jerk or jolt." *Connolly*, 420 Pa. at 283, 216 A.2d at 62. Asbury argues that previous sudden lurch cases were submitted to the jury. *Kleine v. Pittsburgh Railways Co.*, 252 Pa. 214, 97 A. 395 (1916) (testimony that plaintiff thrown from car onto street and that child almost thrown from plaintiff's arms sufficient to present negligence issue to jury); *Sanson v. Philadelphia Rapid Transit Co.*, 239 Pa. 505, 86 A. 1069 (1913) (plaintiff's being thrown through trolley car doorway and onto street created prima facie case of negligence); *Tilton v. Philadelphia Rapid Transit Co.*, 231 Pa. 63, 79 A. 877 (1911) (evidence that street car stopped so suddenly it threw passenger against seat in front of him creates rebuttable presumption of negligence).

PAT argues that the case currently before this Court should be controlled by the outcome in *Hill v. West Penn Railways Co.*, 340 Pa. 297, 16 A.2d 527 (1940). The plaintiff in *Hill*, a passenger on a trolley car, sustained a fractured hip after falling in the trolley because of an allegedly forceful jolt of the trolley. The Supreme Court affirmed the trial court's refusal to remove a compulsory nonsuit. Asbury argues that although in *Hill* the only testimony regarding the nature of the trolley's jolt was from the plaintiff, in this case there is the additional testimony of Dr. Neuschwander which supports Asbury's claim that the bus jolted forward with an extraordinary force that caused Asbury's femur fracture. Furthermore, the plaintiff need not show a vehicular accident but only that the plaintiff's accident establishes the unusual character of the bus's jolt. *Meussner v. Port Authority of Allegheny County*, 745 A.2d 719 (Pa.Cmwlth.2000).

Asbury also argues that the jury could reasonably infer from the extent of her injury as supplemented by the testimony of Dr. Neuschwander that the jolt of the bus was so unusual and extraordinary as to be beyond Asbury's reasonable anticipation and that the trial court erred in not allowing Asbury's case to proceed to the jury and in refusing to remove the compulsory nonsuit and denying Asbury's request for a new trial.

In *Staller*, the Supreme Court held that a sudden or violent jerk or jolt, by itself, was not enough to establish negligence in a public transportation vehicle. It had to clearly appear that the sudden or violent jerk or jolt of the vehicle was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation, and *"nothing short of* ... the effect of which upon the injured person inherently establishes the unusual character of the jolt or jerk, will suffice." *Id.* at 103–104, 14 A.2d at 291 (emphasis added).

■ The mere location, type and extent of the injury is not sufficient evidence upon which to reconstruct the physical events of the event. Such reconstruction must precede the solicitation of opinion evidence from a doctor that the injury was the result of a sudden or violent jerk or jolt so unusual and extraordinary as to be beyond a passenger's reasonable expectation. Such opinion evidence is necessary to meet the burden of proof set forth in *Staller*. Dr. Neuschwander is a highly respected medical doctor, but in this case he does not qualify as an accident reconstruction expert, which is apparently what Asbury attempted to portray him as in his deposition. The only testimony in the record by Dr. Neuschwander linking the injury to the operation of the vehicle was:

Q. And the lateral butterfly fragment, how does an injury like that occur?

A. I mean, it takes a significant amount of trauma to break a femur. So I can't tell you for sure. She had a fall, and, so she may have some twisting component or it may have been due to bending movement—or bending injury to her leg, but it takes a lot of trauma to cause a femur fracture.

. . . .

Q. Doctor, one final question. Regardless whether the bus lurched quickly or came to a sudden stop, it's your opinion to a reasonable degree of medical certainty that Miss Asbury sustained a significant trauma and there was a lot of force involved with this injury, correct ?

A. I mean like I said before, it takes a lot of force to break a femur. So in terms of exactly how it happened I'm not entirely clear, but she had enough force to cause a femur fracture, correct.

(R.R. at 163a; R.R. at 191a–192a). The medical certainty question posed to the doctor asks him to ignore whether the injury was even caused by a quick lurch or a sudden stop. It does not establish the cause of the injury as Appellant Asbury contends. At no point, however, does Dr. Neuschwander even distinguish the ordinary jerk or jolt from the extraordinary force or trauma which he merely assumes must have occurred to cause such a severe injury. It is noted that nowhere does Dr. Neuschwander even testify that in his opinion there was a sudden jerk or jolt but only that there had to be a severe trauma to the femur to cause that type of injury. Further, there is no testimony that the movement of the bus was so unusual and extraordinary that it was beyond Asbury's reasonable anticipation. It is not enough that there was a severe trauma to the femur to cause the type of injury Asbury received.

■ Although his testimony as to the cause of the injury is unequivocal, Dr. Neuschwander's testimony, with his declared uncertainty of the facts precipitating the origin of the injury, is equivocal, incompetent opinion evidence regarding the issue of whether there was a sudden or violent jerk or jolt within the *Staller* requirements. A jury cannot be permitted to rely on the *Hill* case and draw an inference of causation from Asbury's testimony when her testimony is not supported by Dr. Neuschwander's testimony. Asbury has not, therefore, carried her burden of proving that there was a sudden or violent jerk or jolt so unusual and extraordinary as to be beyond a reasonable passenger's anticipation. There is, also, no evidence that any other passenger experienced anything unusual or extraordinary comparable to the situations in the *Kleine*; *Sanson* and *Tilton* cases relied on by Asbury.

■ Finally, Asbury raises the issue that the bus driver failed to comply with PAT's policy requiring him to distribute witness cards despite the fact that only a handful of passengers were on the bus. Asbury argues that this failure to distribute cards prevented her from proving that other passengers experienced extraordinary disturbing effects from the movement of the bus and that therefore the trial court should have submitted the case to the jury with an adverse inference charge that could have permitted the jury to find that the bus was operated negligently when it started up. Asbury does not indicate where in the record there is proof of such a past policy of PAT requiring card distribution after accidents and we could find none. PAT does not admit to the existence of any policy.

■ As an agency of the Commonwealth, PAT is immune from suit for not promulgating such a policy since it does not fall within one of the exceptions in 42 Pa.C.S. 8521–8522. *Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (1990). The passengers on a bus are not within the control of PAT by merely riding its bus and have no duty to stay on a bus to act as witnesses and PAT has no legal right to detain them for that purpose.

■ Without further evidence, the unavailability of such witnesses or witness cards does not justify an adverse inference charge against the carrier. PAT maintains it was only able to locate one passenger witness because she was detained by the injured plaintiff blocking her way. Here, there is no evidence that any of the other passengers, if called, would have testified adversely to PAT or that PAT was guilty of spoliation of any evidence, although plaintiff implies such a suspicion. The whereabouts of bus passengers after work is not always exclusively within the

control of the common carrier; however, the whereabouts of such passengers is sometimes available through independent investigation since such passengers are usually creatures of habit and frequently ride the same bus with regularity for long periods after accidents occur. Unfortunately, Asbury's long period of disability prevented her from personally conducting such an investigation. However, it does indicate that such evidence is not entirely destroyed when the bus empties.

The order of the trial court denying Appellant's motion for the removal of the compulsory nonsuit and denying the granting of a new trial is, therefore, affirmed.

### ORDER

AND NOW, this 7th day of December, 2004, the order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.

### DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent because I believe that Appellant Leslie Asbury produced evidence sufficient to satisfy the threshold requirement of the "jerk or jolt" doctrine and to allow the case to go to the jury. The essence of the "jerk or jolt" doctrine was summarized by the Supreme Court in *Staller v. Philadelphia Rapid Transit Co.,* 339 Pa. 100, 103–104, 14 A.2d 289, 291 (1940):

> It is well established by a long line of decisions that testimony indicating that a moving trolley car jerked suddenly or violently is not sufficient, of itself, to establish negligence in its operations. There must be a showing of additional facts and circumstances from which it clearly appears that the movement of

the car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation, and nothing short of evidence that the allegedly unusual movement had an extraordinarily disturbing effect upon other passengers, or evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the unusual character of the jolt or jerk, will suffice.

Asbury's treating physician, Dr. Neuschwander, testified during his deposition as follows: "It takes a lot of trauma to break a femur. We usually—most people that slip and fall don't break their femur." Transcript at p. 28. Dr. Neuschwander later repeated: "I mean, like I said before, it takes a lot of force to break a femur. So in terms of exactly how it happened, I'm not exactly clear, but she had enough force to cause a femur fracture, correct." *Id.* at pp. 37–38. Dr. Neuschwander also made the following comments at page 9 of the deposition transcript:

Q: And what was your diagnosis following your review of the films?

A: She had a mid femur—mid femoral shaft fracture with a butterfly fragment which means she had a fracture in the mid part of her thigh bone with another piece of the bone broken off at the outer edge.

. . . .

Q: And the lateral butterfly fragment, how does an injury like that occur?

A: I mean, it takes a significant amount of trauma to break a femur. So I can't tell you for sure. She had a fall, and so she may have had some twisting component or it may have been due to bending movement—or bending injury to her leg, but it takes a lot of trauma to cause a femur fracture.

I am persuaded that based on the testimony of Dr. Neuschwander and Asbury,

the trial court should have denied the motion for compulsory nonsuit filed by Port Authority Transit of Allegheny County. Considered in its totality, the testimony satisfies *Staller's* requirement that there be evidence "that the movement of the car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation." *Staller,* 339 Pa. at 103–104, 14 A.2d at 291. A plaintiff may raise a factual question requiring submission of the case to the jury by showing "evidence of an accident, the manner of the occurrence of which *or the effect of which upon the injured person* inherently establishes the unusual character of the jerk or jolt." *Connolly v. Philadelphia Transportation Co.,* 420 Pa. 280, 283, 216 A.2d 60, 62 (1966) (emphasis added).[1] Furthermore, the plaintiff need not show a vehicular accident but only that the plaintiff's accident establishes the unusual character of the vehicle's jolt. *Meussner v. Port Authority of Allegheny County,* 745 A.2d 719 (Pa. Cmwlth.2000).

The jury could reasonably infer from the extent of Asbury's injury and the testimony of Dr. Neuschwander that the jolt of the bus was so unusual and extraordinary as to be beyond Asbury's reasonable anticipation.[2] Thus, I would reverse the trial court's order refusing to remove the compulsory nonsuit and denying Asbury's request for a new trial and remand the case for further proceedings.

---

1. *See Kleine v. Pittsburgh Rys. Co.,* 252 Pa. 214, 97 A. 395 (1916) (testimony that plaintiff thrown from car onto street and that child almost thrown from plaintiff's arms sufficient to present negligence issue to jury); *Sanson v. Philadelphia Rapid Transit Co.,* 239 Pa. 505, 86 A. 1069 (1913) (plaintiff's being thrown through trolley car doorway and onto street created *prima facie* case of negligence); *Tilton v. Philadelphia Rapid Transit Co.,* 231 Pa. 63, 79 A. 877 (1911) (evidence that street car stopped so suddenly it threw passenger against seat in front of him creates rebuttable presumption of negligence).

2. The Port Authority argues that this case should be controlled by the outcome in *Hill v. West Penn Rys. Co.,* 340 Pa. 297, 16 A.2d 527 (1940). The plaintiff in *Hill,* a passenger on a trolley car, sustained a fractured hip after falling in the trolley because of an allegedly forceful jolt of the trolley. The Supreme Court affirmed the trial court's refusal to remove a compulsory nonsuit. However, in *Hill* the only testimony regarding the nature of the trolley's jolt was from the plaintiff; in this case Dr. Neuschwander's testimony supports Asbury's claim that the bus jolted forward with an extraordinary force that caused Asbury's femur fracture.