IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patricia M. White,                       :
                   Appellant             :
                                         :
        v.                               :    No. 625 C.D. 2015
                                         :    Submitted: October 5, 2015
Southeastern Pennsylvania                :
Transportation Authority                 :


BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                              FILED: November 4, 2015


        Patricia White appeals an order of the Court of Common Pleas of
Philadelphia County (trial court) denying White's post-trial motion to remove a
nonsuit and grant her a new trial on her complaint against the Southeastern
Pennsylvania Transportation Authority (SEPTA) for injuries she sustained when
she fell on a SEPTA bus.  The trial court granted SEPTA's motion for compulsory
nonsuit after concluding that, as a matter of law, White failed to establish a *prima
facie* case of SEPTA's negligence.  Finding no error by the trial court, we affirm.

        The following relevant facts were adduced during White's case in
chief at her jury trial.  On January 27, 2012, White was riding a SEPTA bus home
from work to her regular stop at 51st and Spruce Streets in Philadelphia.  While the
bus was stopped at a red light at 50th Street, White stood up and pulled a chord to
request the driver to stop at the next block.  As White was reaching for a pole to

hold onto, the bus began to accelerate away from the stop. White fell backward across the aisle into a seat and struck her head on a metal pole above the seat. White testified that the acceleration "felt like a fast pull and then a forward push and then [I] fell backwards." Notes of Testimony (N.T.), 2/19/2015, at 137; Reproduced Record at 514 (R.R. __). White suffered a severe concussion, post-concussive syndrome and a subdural hematoma.

White presented Daniel Imaizumi, M.S., a high school physics teacher, as a liability expert. The trial court allowed Imaizumi to testify as an expert on his educational knowledge of physics as applied to the incident in question. Imaizumi testified that he viewed a video recording of the incident produced by SEPTA, went to the accident location, matched video "markers" with actual locations and took measurements. Applying mathematical equations, Imaizumi determined that the bus traveled 133 inches in two and one-eighths of a second, or 1.5 meters per second squared. N.T., 2/18/2015, at 70; R.R. 379. Imaizumi testified that he could not compare the forces exerted on White with those on seated passengers because their centers of gravity are different. *Id*. at 63-64; R.R. 377.

Imaizumi conducted an experiment designed to emulate the force someone would experience at the rate of acceleration to which he believed White was exposed. The experiment, which was recorded and played for the jury, involved pulling a test subject on a dolly at the same speed as the bus for a distance of 133 inches. Imaizumi's video showed the test subject in four different positions: (1) seated; (2) standing with his legs apart in an athletic stance; (3) standing with his legs together in a parallel stance; and (4) mimicking White's position at the time of the incident by leaning on his left foot with his right foot

2

slightly supported. Pulling the dolly at the calculated rate of acceleration had no effect on the seated subject. When the test subject assumed the athletic stance he had some difficulty maintaining his balance. In the parallel stance the test subject had great difficulty maintaining his balance and nearly fell. When the test subject replicated White's stance, the acceleration caused him to fall off the dolly. According to Imaizumi, his experiment demonstrated that the bus's acceleration was "unreasonably high" because the subject was unable to maintain his balance when mimicking White's stance immediately before she fell. N.T., 2/18/2015, at 79; R.R. 381.

Michael Cohen, M.D., a neurologist, testified as a medical expert on White's behalf. Dr. Cohen opined that White's brain injury occurred when "she was forcibly thrown back into a pole because the driver accelerated." N.T., 1/23/2015, at 56; R.R. 450. Dr. Cohen explained that he reached this conclusion because he believed "that the only way [White] could have had sufficient trauma to … cause her post-concussion syndrome … [and] subdural hemorrhages … was [being] thrown forcefully, thrust into the pole." *Id*. at 60; R.R. 454.

White offered into evidence SEPTA's video recording of the incident. The video depicts the bus coming to a stop; White standing up and signaling for the next stop; the bus accelerating from the stopped position; and White falling backwards across the aisle and striking her head above a bus seat as she lands in a seated position. *See* Appendix A, R.R. 595.

Finally, White presented the testimony of two SEPTA employees: Arthur Langford, the bus driver, and Hasan Hall, a corporate designee. These witnesses confirmed that SEPTA's policy requires bus drivers to distribute witness

3

cards to passengers following an accident. Langford did not distribute any witness cards after White fell.

SEPTA moved for a nonsuit at the conclusion of White's case. SEPTA argued that White had failed to overcome the so-called "jerk and jolt" doctrine, which allows a plaintiff to recover only where an unusual or extraordinary movement of a public transportation vehicle has caused the injury.[1] The trial court granted SEPTA's motion. White filed a post-trial motion to remove the nonsuit, which was denied. White now appeals to this Court.

On appeal,[2] White argues that the trial court erred in entering a nonsuit in favor of SEPTA because White presented sufficient evidence for a jury to decide whether the bus's "jerk and jolt" was extraordinary. This evidence

---

[1] The Supreme Court has summarized the "jerk and jolt" doctrine as follows:

> It is well established by a long line of decisions that testimony indicating that a moving trolley car jerked suddenly or violently is not sufficient, of itself, to establish negligence in its operation. There must be a showing of additional facts and circumstances from which it clearly appears that the movement of the car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation, and nothing short of evidence that the allegedly unusual movement had an extraordinarily disturbing effect upon other passengers, or evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the unusual character of the jolt or jerk, will suffice.

*Connolly v. Philadelphia Transportation Co.*, 216 A.2d 60, 62 (Pa. 1966) (quoting *Staller v. Philadelphia Rapid Transit Co.*, 14 A.2d 289, 291 (Pa. 1940)). The "jerk and jolt" test is difficult to meet. *Bost-Pearson v. Southeastern Pennsylvania Transportation Authority*, 118 A.3d 472, 476 (Pa. Cmwlth. 2015).

[2] This Court's review of a trial court's order denying removal of a nonsuit is to determine whether the trial court abused its discretion or committed an error of law. *Asbury v. Port Authority Transit of Allegheny County*, 863 A.2d 84, 88 n.4 (Pa. Cmwlth. 2004). A judgment of nonsuit may be entered only in the clearest cases, and a plaintiff must be given the benefit of all favorable evidence, together with all reasonable inferences of fact arising therefrom, and any conflict in the evidence must be resolved in the plaintiff's favor. *Id*.

included White's testimony, video footage of the incident, Imaizumi's expert liability testimony, and Dr. Cohen's expert medical testimony. White also contends that the driver's failure to distribute witness cards following the incident constituted spoliation of evidence and entitled her to an adverse inference charge. White asserts that the trial court, by granting a nonsuit, misapplied the law and improperly substituted its own credibility and factual findings for those of the jury.

We have reviewed White's evidence, including the video recordings of the incident and Imaizumi's experiments. We agree with the trial court's assessment of White's evidence, *i.e.*, even when viewed in a light most favorable to White, and drawing all reasonable inferences in her favor, she failed to demonstrate that the acceleration of the bus was so unusual or extraordinary as to merit submission of her case to the jury. Based on the well-reasoned opinion of the Honorable Karen Shreeves-Johns, which explains why White's case is barred by the "jerk and jolt" doctrine, we affirm.

_____
MARY HANNAH LEAVITT, Judge

5

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patricia M. White,                          :
                        Appellant           :
                                            :
            v.                              :       No. 625 C.D. 2015
                                            :
Southeastern Pennsylvania                   :
Transportation Authority                    :

## **O R D E R**

AND NOW, this 4th day of November, 2015, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter, dated February 20, 2015, is AFFIRMED on the basis of the opinion of the Honorable Karen Shreeves-Johns in *White v. Southeastern Pennsylvania Transportation Authority* (Phila. Co., No. 1421 Dec. Term 2013, filed May 19, 2015).

_____
MARY HANNAH LEAVITT, Judge