IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Margaret Musser,                          :
                          Appellant       :
                                          :
          v.                              :
                                          :
Southeastern Pennsylvania                 :     No. 60 C.D. 2025
Transportation Authority                  :     Argued: February 3, 2026

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE STELLA M. TSAI, Judge


OPINION
BY JUDGE FIZZANO CANNON                          FILED: February 27, 2026


          Margaret Musser (Musser) appeals from a judgment entered by the
Court of Common Pleas of Philadelphia County (Trial Court) following a jury trial
and the Trial Court's denial of Musser's motion for post-trial relief. Upon review,
we affirm the Trial Court's judgment.


                            **I. Background**

          Musser's complaint alleged that she was injured on April 24, 2022,
when she fell after boarding a Southeastern Pennsylvania Transportation Authority
(SEPTA) bus in Philadelphia. Reproduced Record (R.R.) at 13a. Musser testified
that she was seating herself in one of the side-facing seats in the front of the bus and
was "almost in the seat" when the bus restarted, at which point the bus "felt like it
went off to the left a little bit and [she] was thrown to the floor." *Id.* at 42a. She
characterized the motion of the bus in restarting as "aggressive." *Id.* SEPTA
presented contrary evidence at trial, including a video of the incident. *See id.* at 39a-

40a (describing video) & 64a-65a (indicating that the video was shown a second time without interruption at the jury's request).

Musser's legal theory of liability was a negligence doctrine known as the jerk and jolt doctrine, under which a common carrier, such as SEPTA, may be liable for negligence that causes an injury to a bus passenger who falls because the bus experiences a sudden, unusual, or extraordinary jerk or jolt. However, and of relevance in this appeal, merely restarting a bus before a boarding passenger is seated is not negligence in the absence of such a jerk or jolt, unless the passenger has requested that the driver wait until the passenger is seated. *See Asbury v. Port Auth. Transit*, 863 A.2d 84 (Pa. Cmwlth. 2004). Here, Musser's allegation was not that the bus should have waited until she was seated before moving, but rather, that the restart constituted a sudden, unusual, or extraordinary jerk or jolt that caused her to fall. R.R. at 59a.

At trial, SEPTA presented brief testimony that it trains its drivers that they need not wait until a passenger is seated before moving unless the passenger has requested that they do so. R.R. at 66a. Musser objected that this testimony was presented without proper notice and that it was not relevant to the jerk and jolt theory of liability and would confuse the jury. *Id.* at 56a-60a. The Trial Court overruled the objections and allowed the testimony. *See id.* at 60a & 66a-73a. However, the Trial Court sustained an objection by SEPTA and limited Musser's cross-examination by disallowing questions relating to Federal Transit Administration (FTA) training standards for bus drivers, ruling that the FTA standards at issue were irrelevant because they were federal and postdated Musser's fall, and that the proposed cross-examination was beyond the scope of direct examination. *Id.*

At the conclusion of the trial, the Trial Court gave a standard jury instruction explaining the jerk and jolt doctrine. SEPTA requested an addition to that instruction advising the jury that restarting a bus before a passenger is seated is not negligence unless the passenger has asked the driver to wait. The Trial Court gave the additional instruction over Musser's objection. R.R. at 76a-78a & 92a.

After deliberating, the jury returned a verdict finding that both parties were negligent, attributing 26% fault to SEPTA and 74% fault to Musser. R.R. at 97a & 272a. Musser filed a motion for post-trial relief, which the Trial Court denied, and judgment was thereafter entered in SEPTA's favor.[1] *Id.* at 274a. This appeal followed.

## II. Issues

On appeal, Musser raises several interrelated issues, which we consolidate in part and summarize as follows. First, Musser asserts that the Trial Court erred by ruling, in its denial of her post-trial motion, that she had waived her objection to the testimony of SEPTA's witness, its Chief Training Instructor, by not

---

[1] The pertinent portion of Pennsylvania's comparative negligence statute, Section 7102(a) of the Judicial Code, provides:

> (a) General rule. — In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa.C.S. § 7102(a). Here, because the jury apportioned a greater share of causal negligence to Musser than to SEPTA, the comparative negligence statute barred Musser from recovery of any damages.

making a timely objection to that testimony. Second, Musser contends that the Trial Court abused its discretion in certain evidentiary rulings by allowing the testimony of SEPTA's Chief Training Instructor at trial, as well as by limiting her cross-examination of SEPTA's Chief Training Instructor so as to preclude questions relating to certain reports by the FTA concerning training of bus drivers. Finally, Musser posits that the Trial Court abused its discretion by adding an improper non-standard jury instruction concerning absence of a duty for a bus driver to wait until boarding passengers are seated before restarting the bus. We address each argument in turn.

### III. Discussion
### A. Waiver of Objection

At trial, SEPTA presented testimony from its Chief Training Officer that its bus drivers are trained that they may pull away without waiting for boarding passengers to be seated, unless a passenger requests the driver to wait until that passenger is seated. R.R. at 66a. Musser objected to this testimony on two bases – first, that the proposed subject matter of the testimony had not been disclosed by SEPTA in advance, and second, that the testimony was not relevant and was potentially confusing because Musser's legal theory was that the driver restarted the bus with an improper jerk or jolt, not that the driver pulled away without waiting for Musser to be fully seated. *Id.* at 56a-60a. The Trial Court overruled the objection and allowed the testimony. *Id.* at 60a & 66a-73a. At trial, in her post-trial motion, and again on appeal to this Court, Musser asserted error in the Trial Court's allowance of this testimony. In its written opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure (1925 Opinion), the Trial Court opined

4

that Musser had waived her objection by not asserting it in a timely manner. 1925 Opinion[2] at 3-4. We discern no reversible error in the Trial Court's ruling.

Rule 103(a)(1)(A) of the Pennsylvania Rules of Evidence provides that "[a] party may claim error in a ruling to admit or exclude evidence only: (1) if the ruling admits evidence, a party, on the record: (A) makes a timely objection, motion to strike, or motion *in limine* . . . ." Pa.R.E. 103(a)(1)(A); *see also Commonwealth v. Heckathorn*, 241 A.2d 97, 102 (Pa. 1968). Here, the Trial Court's 1925 Opinion does not provide clarity as to why Musser's objection was untimely. It offers only a conclusory statement that "[t]he record does not reflect [Musser] making a timely, contemporaneous objection at trial as to [SEPTA] calling [its Chief Training Officer] as a witness." 1925 Opinion at 4. The trial transcript reflects extended discussion of Musser's objection concerning the proposed testimony. *See* R.R. at 60a & 66a-73a. Within that discussion, however, the Trial Court observed that Musser had failed to object to SEPTA's opening statement describing the proposed testimony to the jury. *Id.* at 58a-59a. We acknowledge, as persuasive, Superior Court decisions indicating that objections to matters included in an opening statement must be raised immediately at the end of that opening statement. *See Commonwealth v. Hutchison*, 164 A.3d 494, 500 (Pa. Super. 2017) (citing *Commonwealth v. Rose*, 960 A.2d 149, 154 (Pa. Super. 2008), *appeal denied*, 980 A.2d 110 (Pa. 2009)).[3] Here, the record reveals that Musser made no objection, either during or immediately after SEPTA's opening statement, to SEPTA's opening statement that it intended to present the

---

[2] The Trial Court's 1925 Opinion is attachment A to Musser's principal appellate brief.

[3] Although not binding on this Court, Superior Court decisions may be cited as persuasive authority where they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

training testimony at issue. *See* R.R. at 39a-41a. Therefore, we cannot conclude that the Trial Court erred in its finding of waiver.

Moreover, any such error would not have supported reversal of the Trial Court's order denying a new trial. As explained in the next section, any error in admitting the testimony at issue would have been harmless because Musser has failed to demonstrate prejudice arising from the admission of the testimony at issue. Inasmuch as any error in admitting the testimony was harmless, it necessarily follows that any error in finding a waiver of objection to that same testimony is likewise harmless. Accordingly, we conclude that even had the Trial Court erred in finding that Musser waived her objection to the testimony of SEPTA's Chief Training Officer, that error would not support awarding a new trial. *See James Corp. v. N. Allegheny Sch. Dist.*, 938 A.2d 474, 483 n.7 (Pa. Cmwlth. 2007) (explaining that even if a trial court has made one or more mistakes, a new trial is not warranted unless the moving party demonstrates harm resulting from the error); *Moore v. Phila.,* 571 A.2d 518, 524 n.9 (Pa. Cmwlth. 1990) (stating that the denial of a request for a new trial will not be reversed on appeal based on an error of law that did not control the outcome of the case) (citing *Martin v. Owens-Corning Fiberglas Corp.*, 528 A.2d 947 (Pa. 1986)).

### B. Evidentiary Rulings[4]
### 1. Testimony by SEPTA's Chief Training Officer

Musser asserts several errors by the Trial Court in its evidentiary rulings concerning testimony by SEPTA's Chief Training Officer. As stated previously, the

---

[4] Evidentiary rulings are committed to the sound discretion of trial courts. *Commonwealth v. Distefano*, 265 A.3d 290, 297 (Pa. 2021) (citing *Commonwealth v. Laird*, 988 A.2d 618, 636

6

testimony at issue was that SEPTA trains its bus drivers that they need not wait until a boarding passenger is seated before restarting the bus unless the passenger has requested that the driver wait.

In one of her assertions of error, Musser maintains that the Trial Court should not have allowed the testimony of the Chief Training Officer because it was not disclosed until the day before it was offered at trial. The discussion among the parties and the Trial Court suggests there may have been an inadvertent error on the part of SEPTA in serving Musser with a non-final or incomplete draft of SEPTA's pretrial disclosures that may not have included the proposed testimony at issue. *See* R.R. at 56a-57a. The Trial Court did not specifically rule on whether the proper advance disclosure was or was not provided to Musser, but in any event, the Trial Court found that SEPTA acted in good faith. *Id.* at 58a. We discern no error in the Trial Court's denial of Musser's objection.

Rule 4019(i) of the Pennsylvania Rules of Civil Procedure provides:

> A witness whose identity has not been revealed as provided in this chapter shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

Pa.R.Civ.P. No. 4019(i). Here, regarding the specific identity of the witness, SEPTA's counsel explained to the Trial Court that the originally designated witness was unable to testify, so another officer was designated instead. R.R. at 57a. We

---

(Pa. 2010)). A party appealing from a trial court's evidentiary ruling bears a heavy burden to demonstrate an abuse of discretion. *Id.* (citing *Commonwealth v. Norton*, 201 A.3d 112, 120 (Pa. 2019)). An abuse of discretion is not a mere error of judgment; rather, it occurs only where the trial court's conclusion "overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* at 298 (citing *Commonwealth v. Gill*, 206 A.3d 459, 466-67 (Pa. 2019)).

conclude that, to the extent Musser's objection related to the identity of the specific witness rather than the subject matter of the testimony, Rule 4019(i) authorized the Trial Court to allow the testimony.

Regarding the substance of a witness's proposed testimony, "[i]n deciding whether to allow the testimony of a witness not included in a pre-trial memorandum, the court must balance the facts and circumstances of each case to determine the prejudice to each party." *Williams v. Se. Pa. Transp. Auth.*, 741 A.2d 848, 855 (Pa. Cmwlth. 1999) (citing *Feingold v. Se. Pa. Transp. Auth.*, 517 A.2d 1270 (Pa. 1986)). More specifically, relevant facts and circumstances include prejudice to the party against whom the witness will testify, ability to cure the prejudice, extent to which allowing the unlisted witness will disrupt the orderly and efficient trial of the case, and bad faith or willfulness in failing to disclose the witness earlier. *Feingold*, 517 A.2d at 1273.

Here, Musser did not point to any prejudice she suffered because of the late disclosure of the proposed testimony of SEPTA's Chief Training Officer. The proposed testimony was disclosed during the first day of trial, giving Musser until the following day to prepare cross-examination. Given the extremely short and narrow testimony at issue, Musser had sufficient opportunity to cure any purported prejudice. Nothing in the record indicates that the testimony, which lasted only a few minutes, disrupted the orderly conduct of the trial. Finally, as discussed above, the record suggests that SEPTA did not willfully fail to disclose the proposed testimony, but rather, inadvertently provided a preliminary or incomplete draft

pretrial statement to Musser.[5]  Accordingly, we discern no abuse of discretion in the Trial Court's allowance of the testimony.

In another assertion of error, Musser argues that the testimony of SEPTA's Chief Training Officer was not relevant because Musser's legal theory was not based on the driver's failure to wait until Musser was seated before restarting the bus, but rather, on Musser's allegation that the restart was sudden and jerked the bus, thereby causing her to fall.  In the discussion of this issue, the Trial Court reasoned that Musser had raised the issue of restart without waiting for her to be seated, by discussing it in her opening statement at trial.  We agree.  *See* R.R. at 38a (statement by Musser's counsel that Musser "never even made it to her seat. . . .  [T]he bus pulled away suddenly, aggressively, unexpectedly. . . .  As a result, [Musser] fell."). The Trial Court found that this statement raised the issue of the bus driver's conduct in restarting the bus sufficiently to make testimony relevant concerning his training on restarting the bus before boarding passengers were seated.  R.R. at 59a.  We additionally observe that Musser herself testified that she was in the process of sitting down but was not fully seated yet when the bus restarted.  *See id.* at 42a.  We conclude that the jury could reasonably have believed, based on Musser's opening statement and testimony, that the restart of the bus before Musser was fully in her seat was being offered as relevant to her cause of action.  As a result, the Trial Court reasonably determined that contrary evidence by SEPTA that the driver was not required to wait was also relevant.  Accordingly, we discern no abuse of discretion in the Trial Court's ruling allowing the testimony.

---

[5] SEPTA also argued that the proposed testimony did not require prior disclosure because it was offered as rebuttal in response to Musser's testimony that the bus driver restarted the bus before she was fully seated.  R.R. at 58a.  The Trial Court did not expressly rule on this issue.

9

Moreover, as stated in the preceding section, any purported error by the Trial Court in admitting the testimony at issue was insufficient to justify awarding a new trial. Our Supreme Court has explained:

> The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

*Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000); *see also Luzerne Cnty. Flood Prot. Auth. v. Reilly*, 825 A.2d 779, 786 (Pa. Cmwlth. 2003) (quoting *Harman*).

In *Nifas v. Wetzel* (Pa. Cmwlth., No. 1782 C.D. 2019, filed Dec. 23, 2021),[6] this Court considered the burden of demonstrating prejudice sufficient to support a new trial. *Nifas* involved a three-day jury trial in which the challenged testimony lasted only a few minutes. Observing that the jury also heard testimony from other witnesses, opening and closing arguments, and the trial court's jury charge, this Court concluded that, in the context of the trial as a whole, the testimony at issue was insufficiently significant to justify a new trial. We explained: "While the amount of time a jury hears an improper statement does not directly equate to the prejudice involved, we believe that it is an important factor to consider when weighing the potential influence the inappropriate remarks had on the jury's verdict." *Id.*, slip op. at 23. Therefore, this Court concluded that the appellant "failed to demonstrate sufficient prejudice to warrant a new trial, and, consequently, the trial court did not abuse its discretion when it denied his post-trial motion." *Id.*

Here, as in *Nifas*, the testimony at issue lasted only a few minutes in a trial that took place over multiple days. The sole point made in the testimony was

---

[6] This unreported opinion is cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

that SEPTA trains its drivers that they need not wait until passengers are seated before pulling away from a stop, unless a passenger asks them to do so. By contrast, the jury heard about the jerk and jolt theory multiple times, in the opening and closing statements of both parties as well as in the Trial Court's jury instructions. The related portion of the jury instruction consisted of a single sentence within the context of the lengthy instruction concerning the elements of the jerk and jolt doctrine. Considering the testimony within the entire context of the trial, as we did in *Nifas*, we likewise conclude here that the Trial Court's allowance of the testimony at issue did not constitute error sufficient to merit a new trial.

### 2. Limited Cross-Examination by Musser

In her cross-examination of SEPTA's Chief Training Officer, Musser attempted to question the witness about FTA reports relating to appropriate training for bus drivers. SEPTA objected to cross-examination using the FTA reports, maintaining that the reports were irrelevant to the narrow issue of training regarding restarts while passengers were not seated and, further, that the reports were irrelevant because they were federal and, in any event, were not issued until after the date of Musser's injury. SEPTA also asserted that any questions regarding the FTA reports were beyond the scope of the very limited direct testimony. The Trial Court sustained the objection. Musser contends that the Trial Court erred by precluding cross-examination relating to the FTA reports. We find no error by the Trial Court.

We observe that the testimony of the Chief Training Officer was very short. It lasted only a few minutes, and its substance consisted solely of a short, bare statement that SEPTA bus drivers are trained that they need not wait to restart until a boarding passenger is seated, unless the passenger asks the driver to wait. *See* R.R.

11

at 42a. In light of the brevity and extremely narrow scope of the direct testimony, we conclude that SEPTA's objections were meritorious, and we discern no abuse of discretion by the Trial Court in precluding cross-examination concerning the FTA reports.

In addition, applying the harmless error analysis set forth above, we conclude that Musser has failed to establish any harm she incurred by reason of the Trial Court's ruling. Accordingly, we conclude that the Trial Court's ruling did not constitute an error supporting an award of a new trial.

### C. Non-Standard Jury Instruction[7]

Section 13.130 of the Pennsylvania Suggested Standard Civil Jury Instructions (SSJI) addresses what is known as the jerk and jolt doctrine, as it applies to common carriers. Section 13.130 provides:

> 13.130[] (Civ) Common Carrier's Duty of Care to Passenger--Sudden Stop
>
> A "common carrier" is a transportation service licensed to carry passengers or property.
>
> Under Pennsylvania law, a "common carrier" must use the highest standard of care in [operating its vehicle] [and] [maintaining its equipment and facilities] [and] [transporting its passengers].
>
> *[Name of defendant]* is a "common carrier" and must use the highest standard of care.

---

[7] In reviewing jury instructions, this Court's review is limited to determining whether the Trial Court abused its discretion or committed an error of law controlling the outcome of the case. *Nardo v. City of Phila.*, 988 A.2d 740, 741 n.2 (Pa. Cmwlth. 2010) (citing *Stewart v. Motts*, 654 A.2d 535, 540 (Pa. 1995)). A jury charge is not inadequate "unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." *Id.*

Common carriers must sufficiently explain [sudden] [unusual] [extraordinary] [stops] [jolts] [jerks].

To prove that *[name of defendant]* was negligent, *[name of plaintiff]* must prove the following:

1. *[name of defendant]* suddenly [stopped] [jolted] [jerked] the *[vehicle type]*; and

2. the passenger[s] could not reasonably anticipate the sudden [stop] [jolt] [jerk]; and

3. *[name of defendant]* did not sufficiently explain the [stop] [jolt] [jerk].

*[Name of plaintiff]* does not have to prove other [persons] [passengers] were also injured in order for you to find *[name of defendant]* negligent.

Pa. SSJI (Civ), §13.130 (2024) (footnote omitted).

The Trial Court in this action gave the standard jury instruction and also, at SEPTA's request, instructed the jury that a bus driver is not required to wait until an entering passenger is seated before restarting the bus unless requested by the passenger to do so. Musser insists this instruction was an abuse of discretion because the standard instruction covered the jerk and jolt doctrine fully and the driver's failure to wait until Musser was seated before restarting the bus was not raised as a basis of liability. Musser posits that including this expanded instruction potentially confused the jury by implicitly suggesting that the case could be decided on the basis that the driver was not required to wait until Musser was seated, before restarting the bus. We discern no merit in this argument.

Musser asserts that a trial court is *not required* to give a non-standard jury instruction requested by a party where the standard suggested jury instruction states the law fully and accurately. Although this statement is true, it does not support Musser's argument that the Trial Court here, was, in effect, *not permitted* to

add the requested language to its jury instruction, such that it abused its discretion by doing so. Musser cites no authority supporting such a proposition.

Further, we cannot agree with Musser's suggestion that the additional instruction was irrelevant. As recited above, Musser alleged that the bus restarted with an improper jerk or jolt that occurred as she was in the process of seating herself. Thus, while Musser's legal theory was expressed in terms of the jerk and jolt doctrine, the bus's restart before Musser was fully seated was a potentially significant factor in the occurrence of the incident. The Trial Court did not abuse its discretion by giving an instruction clarifying to the jury that the jerk and jolt doctrine was not satisfied merely by restarting the bus before Musser was fully seated.

Notably, the Subcommittee[8] Note to SSJI § 13.130 specifically includes a comment relevant to the situation that occurred here, pointing to a case in which "the court found the evidence insufficient to demonstrate an extraordinary stop or jerk where the driver started up the bus before the plaintiff was seated and the plaintiff had not asked the driver to wait until she was seated . . . ." SSJI § 13.130 (citing *Asbury*, 863 A.2d at 84). The drafting subcommittee evidently found it important to clarify that restarting a bus before a passenger was seated, without more, was insufficient to satisfy the jerk and jolt doctrine. We agree with that view.

We conclude that the Trial Court here did not abuse its discretion by clarifying in its jury instructions the legal principle that merely restarting a bus before a boarding passenger is fully seated is not negligence.

---

[8] The Pennsylvania Suggested Standard Civil Jury Instructions were drafted by the Civil Instructions Subcommittee of the Pennsylvania Supreme Court Committee for Proposed Standard Jury Instructions.

## IV. Conclusion

Based on the foregoing discussion, the judgment of the Trial Court is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Margaret Musser,                          :
                         Appellant        :
                                          :
              v.                          :
                                          :
Southeastern Pennsylvania                 :    No. 60 C.D. 2025
Transportation Authority                  :

**O R D E R**

AND NOW, this 27th day of February, 2026, the judgment of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge